IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUY KEVIN ROWLAND,<br><br>    Petitioner,<br><br>    v.<br><br>VINCENT CULLEN, Acting Warden of California State Prison at San Quentin,<br><br>    Respondent. | NO. C 94-3037 SBA<br><br>ORDER REGARDING CAUSE AND PREJUDICE |

**Introduction**

    Petitioner has filed a Brief on Cause and Prejudice and Miscarriage of Justice seeking to overcome the procedural default, in whole or it part, of claims 6, 8, 10, 13 and 14. For the reasons discussed below, the Court finds that petitioner has failed to establish the existence of cause and prejudice to overcome the defaults, nor has he established that failure to consider his claims will result in a fundamental miscarriage of justice.

**Factual Background**

On February 11, 1987, petitioner was charged with one count of first degree murder with the special circumstance that the murder took place during the commission of rape, and one count of rape. The information alleged 12 prior felony convictions, and that petitioner was on parole when he committed the offense. On May 13, 1987, 1987, a jury convicted petitioner of both counts and found true the special circumstance.

Evidence at trial established that on March 16, 1986, Marion Geraldine ("Geri") Richardson[1] went to the "Wild Idle" bar in Byron, Contra Costa County. Geri lived with her mother in Byron and worked as a cook at the Boys' Ranch. She regularly snorted methamphetamine and evidently had a vial of the substance in her possession.

Petitioner was also at the bar. He socialized with Geri for a while. In the eyes of an off-duty bartender, petitioner was "coming on" to Geri, but she did not respond positively.

Before 10 p.m., petitioner left the bar. Some time later, Geri told her friend, Jeanne Weems, that she had a terrible headache and needed to go home to get some sleep as she had to go to work early the next morning. She left the bar alone. Apparently, she drove away in her car. Her vehicle was later seen parked at an odd angle about half a block from the bar. It was empty and unlocked.

In the hours that followed, petitioner brutally beat Geri about the head, face and elsewhere. He also had intercourse with her, evidently against her will. According to expert testimony, Geri had a bruise on her inner thigh which could have been caused by someone using a knee to force the knees apart. Petitioner also choked Geri twice, killing her the second time. Before her death, Geri ingested a potentially lethal dose of methamphetamine. It appears that petitioner put the methamphetamine in her mouth, as apparently she could not have snorted the requisite amount of the substance, or would not have done so voluntarily.

Petitioner hauled Geri's body in his truck to the vicinity of Half Moon Bay, dragged it on the ground and dumped it in the ocean.

---

[1] The state court opinion refers to the victim as "Marion R."

2

On March, 17, at around 7 a.m., petitioner arrived at the house of his lover, Susan Lanet, in Livermore. He appeared disturbed and said he wanted to leave the state. Petitioner and Lanet shared some methamphetamine. He admitted to Lanet that he had killed Geri and asked her whether she wanted Geri's belongings, including a ring and make-up. Lanet declined. Petitioner offered her $20 to clean his truck and remove "blood and every strand of hair." Lanet pretended to accept, but then called the police. Petitioner was arrested as he attempted to flee. At around 9:45 a.m., Geri's body was found at the base of a cliff by Moss Beach near Half Moon Bay.

At trial, petitioner did not present any evidence, call witnesses or take the stand.

During the penalty phase, the prosecution offered in aggravation: 1) the circumstances of the offenses, 2) other criminal activity perpetrated by petitioner, and 3) his prior felony convictions. As to other violent criminal activity, the prosecution presented evidence to the following effect:

On April 4, 1978, petitioner entered the residence of Harriet Larson in San Ramon. Attempting to escape, he battered Larson, who was 63 years old. She suffered a crushed vertebra and was hospitalized for 11 days.

On October 4, 1980, petitioner lured 26 year-old Tereza V. out of a bar in Pleasanton to a park with an offer to share cocaine. At the park, he made sexual advances. She rebuffed him. He assaulted, battered and raped her.

On November 7, 1980, together with a male partner, petitioner lured Lisa V. and Caren F. into a truck in Fremont with a false offer of a ride. Both girls were 13 years old. Petitioner and his counterpart then kidnapped the girls. Caren escaped. Petitioner helped his partner rape Lisa twice. He raped her six times, caused her to orally copulate her, sodomized her twice, and fondled her. During the attack, he threatened her with death if she resisted.

On March 11, 1986, petitioner got into an argument with his step-sister, Keli Taylor, in the home she shared with her mother and stepfather in Pleasanton. They argued about the locking of a door. The underlying cause however, apparently was something else: petitioner had expressed a romantic interest in Keli. She responded with antagonism. During the argument, petitioner picked up a knife and punched his fist through the door of Keli's bedroom. Petitioner assaulted her and threatened her with death.

3

On March 11, 1986, petitioner was introduced to Patricia G. by Susan Lanet at Lanet's home. The trio used methamphetamine. Later, petitioner offered to drive Patricia G. home. Instead, he drove her to the top of a cliff that loomed over a body of water. During the trip, he beat her. At the cliff, he pulled her out of the car, beat her, told her he was going to kill her and throw her body off the cliff. He told her to undress. She complied. He continued to beat and choke her. Although the matter is uncertain, he may have raped her. He then drove her to his mother's house, where he kept her in the bathroom against her will for a time period. He called Lanet and admitted what he had done. Petitioner asked Patricia for some time before she called the police, and then fled.

As to prior felony convictions, the prosecution presented evidence that petitioner was convicted on June 8, 1981, of the following offenses arising out of the Lisa V./Caren F. incident: two counts of sodomy, one count of lewd and lascivious conduct with a child under fourteen years of age, and one count of oral copulation.

In mitigation, petitioner offered evidence to the following effect.

He was born into a middle class family in 1961. He had a brother and two sisters, and was at least of average intelligence. His parents had a violent, alcoholic marriage. His mother especially, neglected and abused him. She twice attempted to drown him in the bathtub when he was a baby. As a toddler, he experienced night terrors and convulsions. At a young age, he commenced psychotherapy and drug therapy. In school, he experienced learning disabilities and behavioral problems. With time, he started to abuse alcohol and drugs. He went on to spend time in correctional facilities. At various points in life, petitioner was diagnosed with various mental conditions, including hyperactivity. At time of trial, when he was 26, petitioner was diagnosed with borderline personality disorder.

Petitioner also offered the background of members of his family. His parents each came from violent, alcoholic backgrounds. His mother was sexually molested by her father. His father, at age eleven, was a catamite for a neighborhood man who gave him gifts in exchange for sexual favors. Petitioner's mother once put his sister's head in the oven when she was a baby and turned the gas on. His father later sexually molested that same sister. Under the influence of alcohol, his father abused his mother.

4

Following deliberations, the jury returned a verdict of death for the murder of Geri.

**Procedural History**

The California Supreme Court affirmed petitioner's conviction on December 17, 1992, People v. Rowland, 4 Cal. 4th 238 (1992), and summarily denied his petition for a writ of habeas corpus on June 1, 1994.

On June 28, 1996, petitioner filed a federal habeas petition. This petition was later amended to delete unexhausted claims. An amended petition containing newly exhausted claims was filed on August 6, 1997. Respondent filed an answer on October 16, 1997. On January 16, 1998, petitioner filed a traverse.

On August 15, 2002, this Court determined that claims 6, 8 and 10, as well as portions of claims 13 and 14 were procedurally defaulted.

On November 30, 2005, petitioner filed a motion to once again amend his petition. The motion was granted. The third amended petition was filed on October 29, 2007. A corrected copy was filed on November 19, 2007. An amended answer was filed on March 24, 2008. An amended reply was filed on September 16, 2009.

The parties subsequently submitted the instant briefs regarding cause and prejudice.

**Legal Standard**

**A. The Antiterrorism and Effective Death Penalty Act (AEDPA)**

The AEDPA applies to this case because petitioner filed his original habeas petition on June 28, 1996, several months after the enactment of the AEDPA. See Woodford v. Garceau, 538 U.S. 202, 206 (2003). Under the AEDPA, a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28

U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412–13 (2000). If the state court did not reach the merits of a claim, federal review of the claim is de novo. Nulph v. Cook, 333 F.3d 1052, 1057 (9th Cir. 2003).

A federal court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1). The state court decision implicated by 2254(d) is the "last reasoned decision" of the state court. See Ylst v. Nunnemaker, 501 U.S. 797, 803–04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091–92 (9th Cir. 2005).

Habeas relief is warranted only if the constitutional error at issue had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Penry v. Johnson, 532 U.S. 782, 796 (2001).

**B. Cause, Prejudice and the Miscarriage of Justice**

The procedural default doctrine and its cause and prejudice standard are rooted in concerns of comity and federalism. Coleman v. Thomspson, 501 U.S. 722, 730 (1991). "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." Id. At 732.

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Id. at 750.

The "cause" standard requires petitioner to show that some objective factor external to the defense impeded counsel's efforts to raise the claim in state court. Murray v. Carrier, 477 U.S. 478, 488 (1986). Such objective impediments include a showing that the factual or legal basis for a claim was not available to counsel, or that "some interference by officials" made compliance with a procedural rule impracticable. Id. Additionally, ineffective assistance of counsel may serve as "cause" for procedural default. Id. "Not just any deficiency in counsel's performance will do,

6

1  however; the assistance must have been so ineffective as to violate the Federal Constitution."
2  Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

3  "Federal courts retain the authority to issue the writ of habeas corpus in a further, narrow
4  class of cases despite a petitioner's failure to show cause for a procedural default. These are
5  extraordinary instances when a constitutional violation probably has caused the conviction of one
6  innocent of the crime." McCleskey v. Zant, 499 U.S. 467, 494 (1991). This class of cases
7  implicates a fundamental miscarriage of justice. Id.

8  In order to avoid a procedural bar to the consideration of the merits of his claims, a petitioner
9  raising a claim of actual innocence must show that a constitutional violation "probably resulted" in
10 his conviction. Schlup v. Delo, 513 U.S. 298, 327 (1995). "To establish the requisite probability,
11 the petitioner must show that it is more likely than not that no reasonable juror would have convicted
12 him in the light of the new evidence." Id.

**Analysis**

**A. Claim 6**

16 In claim 6, petitioner alleges that he was denied his constitutional rights when the trial court
17 ruled that if the entirety of his confession to prosecution witness Susan Lanet were admitted into
18 evidence, then proof of his prior convictions would also be admissible. At trial, in a motion in
19 limine and also after the prosecution completed its direct examination of Lanet, petitioner sought a
20 ruling from the court on the following matter: in order to present evidence on the issue of intent to
21 kill, he proposed to cross-examine Lanet regarding a statement he made in the course of his
22 admission of the crime to the effect that he killed Geri after a fight that was not related to sex, but
23 following an argument about drugs and some negative comments she allegedly made about
24 criminals. Petitioner's counsel asked whether such an inquiry would open the door to the
25 introduction of "other crimes" evidence, since these prior crimes would tend to contradict a drug-
26 related motivation for the murder. The trial court declined to rule, and opined that "I think you are
27 standing in the danger in this area." Rowland, 4 Cal. 4th at 257. Petitioner did not cross-examine
28 Lanet regarding his extrajudicial statement.

7

1   On direct review, the California Supreme Court found this claim barred by virtue of
2   petitioner's failure to secure a final ruling at trial, and by virtue of petitioner's failure to object on
3   the constitutional grounds raised on appeal. Rowland, 4 Cal. 4th at 259, 262 n.2. In its order of
4   August 15, 2002, this Court found this claim defaulted.

5   In an attempt to overcome the default, petitioner now contends that trial counsel's failure to
6   adequately perfect an objection constituted ineffective assistance. He argues that he was prejudiced
7   by counsel's failure in that he was deprived of the opportunity to litigate "whether the trial court was
8   correct in holding a sword over petitioner's head – that if he attempted to introduce reliable evidence
9   that the murder of [Geri] was motivated by a drug dispute and her attitude toward convicts, and not
10  during the course of a rape, then his prior sexually oriented convictions would be admissible."
11  Pet'r's Br. at 4. Petitioner contends that failure to address this claim would result in a miscarriage of
12  justice because "petitioner is actually innocent of the aggravating factor of killing [Geri] during the
13  course of a rape." Id. at 5.

14  Respondent counters that petitioner's claim of ineffective assistance cannot serve as "cause"
15  because it has not been exhausted in state court. He also asserts that in light of the overwhelming
16  evidence of petitioner's guilt, he fails to establish that there will be a miscarriage of justice if his
17  claim is not heard.

18  Respondent is correct. For reasons of comity, a claim of ineffective assistance must first be
19  presented to the state courts as an independent claim before       it may be used to establish cause
20  for a procedural default. Edwards, 529 U.S. at 452. Because petitioner's claim of ineffective
21  assistance has not been presented to the state courts, petitioner may not rely on it to establish cause
22  for his default of claim 6.

23  Petitioner's claim also lacks merit. In order to prevail on his ineffective assistance claim,
24  petitioner has to demonstrate a reasonable probability that had counsel perfected an objection, the
25  result of trial would have been different. See Strickland v. Washington, 466 U.S. 668, 688, 694
26  (1984). Here, the evidence of petitioner's guilt was overwhelming. He confessed the killing to
27  Lanet. He was found to be in possession of Geri's jacket, underwear, socks and shoes. Tr. 4989-90,
28  5445-47, 5609-18, 5838-41. Moreover, the Supreme Court of California found no reasonable

8

1 probability that the introduction of petitioner's statement would have affected the outcome of
2 petitioner's trial. <u>Rowland</u>, 4 Cal. 4th at 274. In light of the foregoing, petitioner fails to establish
3 ineffective assistance.

4 Furthermore, failure to consider petitioner's claim will not result in a fundamental
5 miscarriage of justice. The admission of petitioner's statement that the murder was the result of an
6 argument over drugs and Geri's attitude towards ex-convicts, would have at best provided an
7 additional motive for murder. Petitioner's statement does not negate his commission of rape.

8 Indeed, significant evidence supported the jury's special circumstance finding that the
9 murder was committed during the course of rape. Geri's body was found wearing jeans and a
10 sweatshirt with her bra pushed up over her breasts. Tr. 5163-64, 5239, 5277, 5285. As noted above,
11 petitioner was in possession of her jacket, underwear, socks and shoes. Geri had multiple bruises on
12 her thighs and lower legs, including a bruise on the inner thigh consistent with the use of a knee to
13 hold her legs apart. Tr. 5335-37, 5423. She also had bruises on the backside of her thighs consistent
14 with finger pressure. Tr. 5337.

15 In light of the above evidence, petitioner has failed to demonstrate that it was more likely
16 than not that had the jury heard that he told Lanet that he and Geri argued over drugs and her attitude
17 toward convicts, it would not have found that the murder was committed in the course of rape.
18 Petitioner has failed to establish a miscarriage of justice. <u>See</u> <u>Schlup</u>, 513 U.S. at 327.

19 For the above-mentioned reasons, claim 6 is dismissed.

20

21 **B. Claim 8**

22 In claim 8, petitioner alleges that he was denied his constitutional rights when the trial court
23 allowed prosecution witness Jeanne Weems to testify to hearsay statements made by the victim on
24 the night of her death. Weems, who was at the Wild Idle bar on the night of the crime, testified that
25 Geri told her that she had a headache and needed to go home early. The testimony was elicited to
26 refute any suggestion that sex later that night with petitioner was consensual.

27 Prior to trial, petitioner moved in limine to prohibit the introduction of evidence of the
28 victim's extrajudicial statement to Jeanne Weems. The trial court denied his motion, finding that

9

1  Geri's statement was admissible under the state-of-mind exception to the hearsay rule, relevant and
2  more probative than prejudicial. Rowland, 4 Cal. 4th at 263. The Supreme Court of California
3  upheld the trial court's ruling on direct appeal even though no contemporaneous objection to the
4  evidence was raised at trial, finding that petitioner's motion in limine provided sufficient evidence of
5  objection. Id. at 393 n.3. The Supreme Court of California refused, however, to consider any
6  challenge to the evidence on federal constitutional grounds because counsel did not raise such
7  arguments at trial. Because the California Supreme Court found this claim procedurally barred
8  when it was presented on direct review, this Court found petitioner's claim defaulted.

9  In an attempt to overcome the default, petitioner argues that counsel's failure to include
10 federal constitutional grounds as a basis for objection constituted ineffective assistance as there
11 could not have existed any tactical advantage to such an omission. He contends an objection would
12 have been sustained under Ohio v. Roberts, 541 U.S. 36 (2004), *abrogated by* Crawford v.
13 Washington, 541 U.S. 36 (2004), because Geri's statement lacked indicia of reliability. Petitioner
14 further alleges that he is actually innocent of murder in the course of rape, and failure to consider his
15 claim will result in a miscarriage of justice.

16 Respondent counters that as in claim 6 above, petitioner failed to exhaust his ineffective
17 assistance claim and refutes petitioner's assertions regarding the miscarriage of justice.

18 Respondent is correct. As in claim 6, because petitioner's claim of ineffective has not been
19 presented to the state courts, petitioner may not rely on it to establish cause for his default of claim
20 8. Edwards, 529 U.S. at 452.

21 Moreover, petitioner's claim of ineffective assistance lacks merit. He asserts that he was
22 prejudiced by the erroneous admission of Geri's statement in that it helped establish that sex
23 between them was non-consensual. Even assuming that the statement was erroneously admitted –
24 an allegation rejected by the Supreme Court of California on direct appeal, Rowland, 4 Cal. 4th at
25 264 – in light of the overwhelming evidence of petitioner's guilt, petitioner has failed to demonstrate
26 a reasonable probability that had counsel raised an objection on federal grounds, the result of trial
27 would have been different. See Strickland, 466 U.S. at 688.

28

10

1   Finally, for the reasons cited in the discussion of claim 6, petitioner fails to establish that
2 failure to consider his claim will result in a miscarriage of justice. As discussed, significant
3 evidence supported the jury's special circumstance finding that the murder was committed during
4 the course of rape. Petitioner has failed to demonstrate that it was more likely than not that had
5 evidence of the victim's extrajudicial statement to Weems been excluded at trial, the jury would not
6 have found that the murder was committed in the course of rape. See Schlup, 513 U.S. at 327.
7 Accordingly, claim 8 is dismissed.

### C. Claim 10

10  In claim 10, petitioner alleges that his death sentence was imposed in violation of his
11 constitutional rights because irrelevant, speculative evidence regarding the conditions of
12 confinement of an inmate serving a life sentence without possibility of parole ("LWOP") was
13 admitted during the penalty phase of trial. He asserts that the prosecutor, while cross-examining a
14 defense witness, impermissibly elicited information that LWOP inmates can have conjugal visits, get
15 married, have children, have access to weightlifting equipment, libraries, television and stereos.
16 Petitioner claims that this led the jury to consider factors other than statutory aggravating factors in
17 deciding whether he should be sentenced to death.

18  The California Supreme Court found petitioner's challenge to the admission of evidence,
19 with the exception of its related allegation of ineffective assistance of counsel, procedurally barred
20 due to his failure to object at trial. Rowland, 4 Cal. 4th at 275 n.16. It also denied the claim on the
21 merits. Id. at 275. This Court found petitioner's claim, with the exception of its ineffective
22 assistance subclaim, defaulted.

23  In order to overcome the default, petitioner argues that counsel's failure to object to the
24 prosecutor's arguments constituted ineffective assistance as there could not have existed any tactical
25 advantage to such an omission. Respondent counters that the state court reasonably rejected
26 petitioner's claim on direct appeal.

27  Respondent is correct. The touchstone of due process analysis in cases of alleged
28 prosecutorial misconduct is the fairness of the trial. Smith v. Phillips, 455 U.S. 209, 219 (1982). A

11

defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." See Darden v. Wainwright, 477 U.S. 168, 181 (1986). Here, as noted by the state court, the prosecutor's challenged comments were not improper as they comprised an "unproblematic argument to the effect that life imprisonment without possibility of parole was not the appropriate punishment in this case." Rowland, 4 Cal. 4th at 275 n.16. The state court further reasonably observed that is was not objectively unreasonable for counsel to remain silent and not call attention to the prosecutor's questioning. Id.

Petitioner has failed to establish ineffective assistance. He has therefore failed to establish cause to overcome procedural default. Accordingly, claim 8 is dismissed.

**D. Claim 13**

In claim 13, petitioner alleges that the prosecutor's disparaging remarks about the integrity of petitioner's psychiatric expert, Dr. Hugh Ridlehuber, constituted misconduct and prejudiced petitioner's ability to present a defense. The challenged remarks include statements that psychiatry was mere guesswork, that psychiatrists "just can't accept that some people make bad choices because they make bad choices," and a stated failure to understand why Dr. Ridlehuber would use his education and training to do "what he does." Petitioner further alleges that his trial counsel was ineffective for failing to object to the prosecutor's remarks.

On direct appeal, the California Supreme Court found this claim procedurally barred due to petitioner's failure to object at trial. It also denied the claim on the merits. Rowland, 4 Cal. 4th at 274, 276-77. The state court did not however, address petitioner's allegation of ineffective assistance. This Court found claim 13, with the exception of the ineffective assistance subclaim, defaulted.

In order to overcome the default, petitioner argues that counsel's failure to object to the prosecutor's arguments constituted ineffective assistance as there could not have existed any tactical advantage to such an omission. He further states that because Dr. Ridlehuber's testimony was critical to the defense, he was prejudiced by counsel's failure to object.

Petitioner's arguments lack merit. The prosecutor's comments did not render the trial fundamentally unfair. Darden, 477 U.S. at 181. As note by the Supreme Court of California, the comments, though "harsh and unbecoming," constituted reasonable inferences from the evidence. Id. at 277. The state court reasoned:

> For instance, Dr. Ridlehuber himself admitted that "psychiatry is not an exact science"; that psychiatrists rely on what they are told by their patients, who sometimes lie; that "two equally competent psychiatrists can conduct an examination on an individual and come to different conclusions"; and that psychiatrists can be fooled, and I've been fooled."  Also, as noted, there was evidence showing defendant's interest in psychology and suggesting manipulation on his part . . . In the challenged remarks, the prosecutor did not substantially misstate the facts or go beyond the record. Surely, his personal attack on Dr. Ridlehuber was somewhat insulting in its implications . . . But it did not amount to a deceptive or reprehensible method of persuasion.

Id. Because the substantive predicate of petitioner's ineffective assistance claim lacks merit, the claim itself likewise fails. See Matylinsky v. Budge, 557 F.3d 1083, 1094 (9th Cir. 2009). Moreover, any objection to the prosecutor's remarks would have been overruled. See Miller v. Keeney,  882 F.2d 1428, 1434 (9th Cir.1989) (petitioner challenging a futile objection fails both prongs of Strickland.)

Petitioner thus fails to establish cause and prejudice to overcome the default of his claim. Accordingly, claim 13 is dismissed.

**E.  Claim 14**

In claim 14, petitioner alleges that the prosecutor improperly told the jurors that they could not consider petitioner's parents' backgrounds when assessing the strength of the mitigating evidence presented at the penalty phase. Petitioner further alleges that his trial counsel was ineffective for failing to object to the prosecutor's comments.

On direct appeal, the Supreme Court of California found petitioner's challenge to the prosecutor's comments procedurally barred due to his failure to object at trial. It also denied the claim on the merits. Rowland, 4 Cal. 4th at 274-75, 278-80.  This Court found claim 14, with the exception of its ineffective assistance subclaim, defaulted.

13

1    In order to overcome the default, petitioner argues that counsel's failure to object to the
2 prosecutor's arguments constituted ineffective assistance. Respondent counters that because the
3 prosecutor's comments did not amount to misconduct, counsel was not ineffective for failing to
4 object to them.

5    Respondent is correct. In denying petitioner's claim, the state court noted that "the
6 background of the defendant's family is of no consequence in and of itself . . . It is the 'defendant's
7 character or record' that 'the sentencer . . . [may] not be precluded from considering' - not his
8 family's." Id. at 279.   The court continued to state:

> To be sure, the background of the defendant's family is material if, and to the extent
> that, it related to the background of defendant himself. But that very point emerges
> from the challenged remarks. For example, the prosecutor stated: "Again, think back
> and decide how much of this extremely emotional and painful testimony you heard
> about Guy Rowland's family applies to him rather than other people. The things that
> don't apply to him are not things you can consider in determining whether or not Guy
> Rowland is entitled go sympathy." Thus - the prosecutor declared expressly - the
> background of defendant's family does not matter if it does not touch his own. But -
> he implied - family background does count if it involves defendant himself. There is
> no reasonable likelihood that the jury understood the words otherwise.

Id. at 279-80.

   As noted by the state court, the prosecutor did not commit misconduct. Consequently, trial
counsel was not ineffective for failing to raise an objection. See Juan H. v. Allen, 408 F.3d 1262,
1273 (9th Cir. 2005) (trial counsel can not have been ineffective for failing to raise a meritless
objection).

   Petitioner fails to establish cause and prejudice to overcome the default of his claim.
Accordingly, claim 14 is dismissed.

**Conclusion**

   For the above-mentioned reasons, petitioner fails to overcome the default, in whole or in
part, of claims 6, 8, 10, 13 and 14. He also fails to establish entitlement to an evidentiary hearing.
See Campbell v. Blodgett, 997 F.2d 512, 524 (9th Cir. 1992) (evidentiary hearing is not necessary to

14

allow a petitioner to establish cause and prejudice if the court determines as a matter of law that petitioner cannot satisfy the standard.)  Accordingly, claims 6, 8, 10, 13 and 14 are dismissed.

The parties are directed to contact the Court to schedule a telephonic case management conference.  Prior to the conference, the parties should meet and confer, and prepare a joint case management statement with a proposed litigation schedule.  The joint statement should be filed no later than ten days prior to the conference.

**IT IS SO ORDERED.**

**DATED:** 9/13/10

                      _____
**SAUNDRA BROWN ARMSTRONG**
**United States District Judge**

15