**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GUY KEVIN ROWLAND,                             No. C 94-3037 WHA

        Petitioner,                          **ORDER GRANTING SUMMARY
                                               JUDGMENT FOR RESPONDENT**

  v.

KEVIN CHAPPELL, Warden,

        Respondent.
_____/

     Petitioner Guy Kevin Rowland, a California state prisoner sentenced to death, seeks a

writ of habeas corpus under 28 U.S.C. 2254.  Respondent now moves for summary judgment on

all of petitioner's claims.  For the following reasons, respondent's motion is **GRANTED.**

**FACTUAL BACKGROUND[1]**

     On February 11, 1987, petitioner Guy Kevin Rowland was charged with one count of

first-degree murder with the special circumstance that the murder took place during the

commission of rape and one count of rape.  The information alleged 12 prior felony convictions

and that petitioner was on parole when he committed the offense.

     Petitioner was represented at trial by attorneys Charles Pierpont and James Courshon.

---

[1] These facts are taken from *People v. Rowland*, 4 Cal. 4th 238 (1992).  Under 28
U.S.C. 2254(e)(1), the factual findings made by the California Supreme Court are
presumptively correct.

United States District Court

For the Northern District of California

1   Evidence at trial established that on March 16, 1986, Marion Geraldine ("Geri") Richardson

2   went to the "Wild Idle" bar in Byron, Contra Costa County.[2]  Geri lived with her mother in

3   Byron and worked as a cook at the Boys' Ranch.  She regularly snorted methamphetamine and

4   evidently had a vial of the substance in her possession.

5        Petitioner was also at the bar. He socialized with Geri for a while.  According to an off-

6   duty bartender, petitioner was "coming on" to Geri, but she did not respond positively.

7   Before 10 p.m., petitioner left the bar.  Some time later, Geri told her friend, Jeanne Weems,

8   that she had a terrible headache and needed to go home to get some sleep as she had to go to

9   work early the next morning.  She left the bar alone.  Apparently, she drove away in her car.

10  Her vehicle was later seen parked at an odd angle about half a block from the bar.  It was empty

11  and unlocked.

12       In the hours that followed, petitioner brutally beat Geri about the head, face and

13  elsewhere.  He also had intercourse with her, evidently against her will.  According to expert

14  testimony, Geri had a bruise on her inner thigh which could have been caused by someone using

15  a knee to force the knees apart.  Petitioner also choked Geri twice, killing her the second time.

16  Before her death, Geri ingested a potentially lethal dose of methamphetamine.  It appears that

17  petitioner put the methamphetamine in her mouth, as apparently she could not have snorted the

18  requisite amount of the substance or would not have done so voluntarily.

19       Petitioner hauled Geri's body in his truck to the vicinity of Half Moon Bay, dragged it

20  across the ground and dumped it in the ocean.  On March 17, at around 7 a.m., petitioner arrived

21  at the house of his lover, Susan Lanet, in Livermore.  He appeared disturbed and said he wanted

22  to leave the state. Petitioner and Lanet shared some methamphetamine.  He admitted to Lanet

23  that he had killed Geri and asked her whether she wanted Geri's belongings, including a ring

24  and make-up. Lanet declined. Petitioner offered her $20 to clean his truck and remove "blood

25  and every strand of hair."  Lanet pretended to accept, but then called the police.  Petitioner was

26  arrested as he attempted to flee.  At around 9:45 a.m., Geri's body was found at the base of a

27

28       [2] The parties refer to the victim as "Geri"; the state court opinion refers to her as
    "Marion R."

2

1    cliff by Moss Beach near Half Moon Bay.  Blood and other evidence in petitioner's vehicle tied

2    him to the killing.

3        At the guilt phase of the trial, petitioner did not present any evidence, call witnesses or

4    take the stand.  His primary defense was that the evidence did not establish first-degree murder

5    or rape.  On May 13, 1987, the jury convicted petitioner of first-degree murder and rape and

6    also found true the special circumstance allegation of felony murder in the course of rape.

7        During the penalty phase, the prosecution offered in aggravation: (1) the circumstances

8    of the offenses, (2) other criminal activity perpetrated by petitioner, and (3) his prior felony

9    convictions.  As to other violent criminal activity, the prosecution presented evidence during the

10   penalty phase to the following effect:

11       On April 4, 1978, petitioner entered the residence of Harriet Larson in San Ramon.

12   Attempting to escape, he battered Larson, who was 63 years old.  She suffered a crushed

13   vertebra and was hospitalized for 11 days.

14       On October 4, 1980, petitioner lured 26 year-old Tereza V. out of a bar in Pleasanton to

15   a park with an offer to share cocaine.  At the park, he made sexual advances.  She rebuffed him.

16   He assaulted, battered and raped her.

17       On November 7, 1980, together with a male partner, petitioner lured Lisa V. and Caren

18   F. into a truck in Fremont with a false offer of a ride.  Both girls were 13 years old.  Petitioner

19   and his counterpart then kidnapped the girls.  Caren escaped.  Petitioner helped his partner rape

20   Lisa twice.  He raped her six times, caused her to orally copulate him, sodomized her twice, and

21   fondled her.  During the attack, he threatened her with death if she resisted.

22       On March 11, 1986, petitioner got into an argument with his step-sister, Keli T., in the

23   home she shared with her mother and stepfather in Pleasanton.  They argued about the locking

24   of a door.  The underlying cause, however, was apparently something else: petitioner had

25   expressed a romantic interest in Keli.  She responded with antagonism.  During the argument,

26   petitioner picked up a knife and punched his fist through the door of Keli's bedroom. Petitioner

27   assaulted her and threatened her with death.

28       On March 11, 1986, petitioner was introduced to Patricia G. by Susan Lanet at Lanet's

3

**United States District Court**
For the Northern District of California

1  home.  The trio used methamphetamine.  Later, petitioner offered to drive Patricia G. home.

2  Instead, he drove her to the top of a cliff that loomed over a body of water.  During the trip, he

3  beat her.  At the cliff, he pulled her out of the car, beat her, told her he was going to kill her and

4  throw her body off the cliff.  He told her to undress.  She complied.  He continued to beat and

5  choke her.  Although the matter is uncertain, he may have raped her.  He then drove her to his

6  mother's house, where he kept her in the bathroom against her will for a time period.  He called

7  Lanet and admitted what he had done.  Petitioner asked Patricia for some time before she called

8  the police and then fled.

9       As to prior felony convictions, the prosecution presented evidence that petitioner was

10  convicted on June 8, 1981, of the following offenses arising out of the Lisa V./Caren F.

11  incident: two counts of sodomy, one count of lewd and lascivious conduct with a child under

12  fourteen years of age, and one count of oral copulation.

13       In mitigation, petitioner offered evidence to the following effect.  He was born into a

14  middle class family in 1961.  He had a brother and two sisters and was at least of average

15  intelligence.  His parents had a violent, alcoholic marriage.  His mother, especially,

16  neglected and abused him.  She twice attempted to drown him in the bathtub when he was a

17  baby.  As a toddler, he experienced night terrors and convulsions.  At a young age, he

18  commenced psychotherapy and drug therapy.  In school, he experienced learning disabilities

19  and behavioral problems.  With time, he started to abuse alcohol and drugs.  He went on to

20  spend time in correctional facilities.  At various points in life, petitioner was diagnosed with

21  various mental conditions, including hyperactivity.  At the time of trial, when he was 26,

22  petitioner was diagnosed with borderline personality disorder.

23       Petitioner also offered the background of members of his family.  His parents each came

24  from violent, alcoholic backgrounds.  His mother was sexually molested by her father.  His

25  father, at age eleven, was given gifts in exchange for sexual favors by a neighborhood man.

26  Petitioner's mother once put his sister's head in the oven when she was a baby and turned the

27  gas on.  His father later sexually molested that same sister.  Under the influence of alcohol, his

28  father abused his mother.

Following deliberations after the penalty phase, the jury returned a verdict of death for the murder of Geri.

## PROCEDURAL BACKGROUND

The California Supreme Court affirmed petitioner's conviction on December 17, 1992, *Rowland*, 4 Cal. 4th at 238, and summarily denied his petition for a writ of habeas corpus on June 1, 1994. On June 28, 1996, petitioner filed a federal habeas petition. This petition was later amended to delete unexhausted claims. An amended petition containing newly exhausted claims was filed on August 6, 1997. Respondent filed an answer on October 16, 1997. On January 16, 1998, petitioner filed a traverse.

On August 15, 2002, an order herein determined that claims 6, 8 and 10, as well as portions of claims 13 and 14, were procedurally defaulted. Subsequent orders ruled that petitioner had failed to demonstrate cause and prejudice to overcome the defaults. On November 30, 2005, petitioner filed a motion to once again amend his petition. The motion was granted. The third amended petition was filed on October 29, 2007. A corrected copy was filed on November 19, 2007. An amended answer was filed on March 24, 2008. An amended traverse was filed on September 16, 2009.

Respondent now brings a motion for summary judgment on all claims in the petition. Petitioner opposes respondent's motion and requests an evidentiary hearing on all claims.

## LEGAL STANDARDS

### 1.   THE ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT

AEDPA applies to this case because petitioner filed his original habeas petition on June 28, 1996, several months after the enactment of the AEDPA.[3]  *See Woodford v. Garceau*, 538

---

[3] This court has already held that AEDPA applies to this case. *See* Order Regarding Cause and Prejudice filed September 14, 2010. Nonetheless, petitioner now maintains that AEDPA does not apply. Petitioner recognizes that he filed his petitioner after AEDPA's effective date, but argues that because he filed a motion for stay of execution prior to AEDPA's effective date, AEDPA should not apply. Petitioner is wrong. As the Supreme Court made clear in *Woodford v. Garceau*, the filing of a motion for stay, appointment of counsel, and/or a statement of non-frivolous claims does not constitute a filing of a petition under AEDPA. 538 U.S. 202, 208-10 (2003). Rather, the triggering date is the filing of the original petition, which petitioner does and must acknowledge was filed on June 28, 1996, after the enactment of AEDPA, and thus subject to its requirements.

United States District Court
For the Northern District of California

U.S. 202, 206 (2003).  Pursuant to AEDPA, a district court may not grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. 2254(d).  A federal court must presume the correctness of the state court's factual findings, and the presumption of correctness may only be rebutted by clear and convincing evidence.  28 U.S.C. 2254(e)(1).

The "contrary to" and "unreasonable application" clauses of Section 2254(d) have separate and distinct meanings.  A state court's decision is "contrary to" clearly established United States Supreme Court law if it fails to apply the correct controlling authority or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result.  *See Williams v. Taylor*, 529 U.S. 362, 404, 413-14 (2000).  A decision is an "unreasonable application" of United States Supreme Court law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 414.  In *Harrington v. Richter*, the Supreme Court further clarified that "'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'"  131 S. Ct. 770, 785 (2011) (citing *Williams*, 529 U.S. at 410) (emphasis in original).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Id.* at 786 (citing *Yarborough v. Alvarado*, 541 U.S. 653, 664 (2004)).

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must be objectively unreasonable."  *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).  "While the 'objectively unreasonable' standard is not self-explanatory, at a minimum it denotes a great[] degree of

6

**United States District Court**
For the Northern District of California

1   deference to the state courts." *Clark v. Murphy*, 331 F.3d 1062, 1068 (9th Cir. 2003).

2         Holdings of the Supreme Court at the time of the state court decision are the only

3   definitive source of clearly established federal law under AEDPA. *See Williams*, 529 U.S. at

4   412. While circuit law may be "persuasive authority" for purposes of determining whether a

5   state court decision is an unreasonable application of Supreme Court law, only the Supreme

6   Court's holdings are binding on the state courts and only those holdings need be reasonably

7   applied. *See Clark*, 331 F.3d at 1070.

8         When a federal court is presented with a state court decision that is unaccompanied by a

9   rationale for its conclusions, there is no basis other than the record "for knowing whether the

10  state court correctly identified the governing legal principle or was extending the principle into

11  a new context." *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). In such situations, federal

12  courts must conduct an independent review of the record to determine whether the state court

13  decision is objectively unreasonable. *Ibid.* Specifically, "where a state court's decision is

14  unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing

15  there was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.

16        While federal courts "'are not required to defer to a state court's decision when that

17  court gives [them] nothing to defer to, [they] must still focus primarily on Supreme Court cases

18  in deciding whether the state court's resolution of the case constituted an unreasonable

19  application of clearly established federal law.'" *Greene v. Lambert*, 288 F.3d 1081, 1089 (9th

20  Cir. 2002) (quoting *Fisher v. Roe*, 263 F.3d 906, 914 (9th Cir. 2001)). Furthermore, independent

21  review of the record is not *de novo* review of the constitutional issue, but rather the only way a

22  federal court can determine whether a silent state court decision is objectively unreasonable.

23  *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

24        Even if a petitioner meets the requirements of Section 2254(d), habeas relief is

25  warranted only if the constitutional error at issue had a substantial and injurious effect or

26  influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).

27  Under this standard, petitioners "may obtain plenary review of their constitutional claims, but

28  they are not entitled to habeas relief based on trial error unless they can establish that it resulted

United States District Court

For the Northern District of California

1   in 'actual prejudice.'" *Brecht*, 507 U.S. at 637 (citing *United States v. Lane*, 474 U.S. 438, 439

2   (1986)).

3   **2.      EVIDENTIARY HEARING UNDER AEDPA**

4           In his opposition to respondent's motion for summary judgment, petitioner requests an

5   evidentiary hearing on every claim.

6           Section 2254(d), as amended by AEDPA provides:

7           An application for a writ of habeas corpus on behalf of a person in custody
            pursuant to the judgment of a State court shall not be granted with respect to any
8           claim that was adjudicated on the merits in State court proceedings
            unless the adjudication of the claim –
9
            (1) resulted in a decision that was contrary to, or
10          involved an unreasonable application of, clearly
            established Federal law, as determined by the Supreme
11          Court of the United States; or

12          (2) resulted in a decision that was based on an
            unreasonable determination of the facts in light of the
13          evidence presented in the State court proceeding.

14  28 U.S.C. 2254(d).  The Supreme Court held in *Cullen v. Pinholster* that "review under

15  § 2254(d)(1) is limited to the record that was before the state court that adjudicated

16  the claim on the merits."  131 S. Ct. 1388, 1398 (2011).

17          While the central holding of *Pinholster* pertains to Section 2254(d)(1), the Supreme

18  Court unambiguously observed that "§ 2254(d)(2) includes the language 'in light of the

19  evidence presented in the State court proceeding,'" providing "additional clarity" that review

20  under Section 2254(d)(2) is limited to the state court record.  *Pinholster*, 131 S. Ct. at 1400 n.7.

21  A reviewing court is, therefore, no more able to consider new evidence developed at a federal

22  evidentiary hearing when determining whether a petitioner has satisfied Section 2254(d)(2) than

23  it is when considering Section 2254(d)(1).  Thus, while a federal court may continue to consider

24  new evidence when applying *de novo* review, such review is available only after a petitioner has

25  satisfied Section 2254(d).  *See Panetti v. Quarterman*, 551 U.S. 930, 953-54 (2007) (holding

26  that when "the requirement set forth in § 2254(d)(1) is satisfied[, a] federal court must then

27  resolve the claim without the deference AEDPA otherwise requires"); *Maxwell v. Roe*, 628 F.3d

28

486, 494-495 (9th Cir. 2010) ("[W]hen a state court adjudication is based on an antecedent unreasonable determination of fact, we proceed to consider the petitioner's related claim de novo"); *Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (holding that where "there is [§ 2254(d)(1)] error, we must decide the habeas petition by considering de novo the constitutional issues raised"). Moreover, even where a petitioner has had no hearing on his claim in state court, the federal court must consider whether his claim could satisfy Section 2254(d) before holding a hearing. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Thus, this order finds that petitioner Rowland must satisfy the requirements of Section 2254(d) on the basis of the state court record before he may show that he is entitled to an evidentiary hearing.

**3. SUMMARY JUDGMENT**

Summary judgment is appropriate where the moving party demonstrates "that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The motion should not be granted, however, if a reasonable trier of fact, viewing the evidence in the light most favorable to the non-moving party, could resolve a material issue in the nonmoving party's favor. *See ibid.* at 248-49; *Barlow v. Ground*, 943 F.2d 1132, 1134-36 (9th Cir. 1991).

**4. INEFFECTIVE ASSISTANCE OF COUNSEL**

The Sixth Amendment guarantees the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, petitioner must show both that counsel's performance was deficient and that the deficient performance prejudiced petitioner's defense. *Ibid.* at 688. To prove deficient performance, petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Ibid.; see also Bobby v. Van Hook*, 130 S. Ct. 13, 18 (2009) (*per curiam*) (noting that guidelines, such as those promulgated by the American Bar Association, purporting to establish what reasonable attorneys would do may be helpful but are not the test for determining whether counsel's choices are objectively reasonable). This requires showing that counsel made errors so serious that counsel was not

United States District Court
For the Northern District of California

9

United States District Court

For the Northern District of California

functioning as the "counsel" guaranteed by the Sixth Amendment. *See Strickland*, 466 U.S. at 687-88.

The relevant inquiry is not what defense counsel could have done, but rather whether the choices made by defense counsel were reasonable. *See Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998). Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689; *Wildman v. Johnson*, 261 F.3d 832, 838 (9th Cir. 2001); *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994). The reasonableness of counsel's decisions must be measured against the prevailing legal norms at the time counsel represented the defendant. *Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003); *see also Jennings v. Woodford*, 290 F.3d 1006, 1016 (9th Cir. 2002) (finding deficient performance where counsel who had settled on alibi defense failed to investigate possible mental defense despite state supreme court decision before trial that in such instances counsel is not excused from investigating the potential mental defense). A difference of opinion as to trial tactics does not constitute denial of effective assistance, *see United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981), and tactical decisions are not ineffective assistance simply because in retrospect better tactics are known to have been available. *See Bashor v. Risley*, 730 F.2d 1228, 1241 (9th Cir.).

Under AEDPA, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Richter*, 131 S. Ct. at 785. The state decision under review need not explain the state court's reasoning, and the habeas petitioner still bears the burden to show there was no reasonable basis for the state court to deny relief. *Id.* at 784.

To prove counsel's performance was prejudicial, petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. A petitioner must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

10

1    *Id.* at 688. The test for prejudice is not outcome-determinative, *i.e.*, defendant need not show

2    that the deficient conduct more likely than not altered the outcome of the case; however, a

3    simple showing that the defense was impaired is also not sufficient. *Id.* at 693.

4         The *Strickland* prejudice analysis is complete in itself. Therefore, there is no need for

5    additional harmless error review pursuant to *Brecht*, 507 U.S. at 637. *Musladin v. Lamarque*,

6    555 F.3d 830, 834 (9th Cir. 2009); *Avila v. Galaza*, 297 F.3d 911, 918 n.7 (9th Cir. 2002).

7                                      **ANALYSIS**

8    **1.**     **CLAIM 1**

9         In Claim 1, petitioner maintains that his trial attorneys were ineffective for failing to

10   investigate and present potentially meritorious mental defenses at the guilt phase. This claim

11   was raised in petitioner's first state habeas petition and denied on the merits in a summary

12   opinion by the California Supreme Court.

13         Petitioner is unable to cite to any clearly established federal law that would entitle him

14   to relief, and a review of the record does not demonstrate that the state court was objectively

15   unreasonable in denying this claim. As discussed *supra*, in order to establish ineffective

16   assistance of counsel, petitioner must show both that counsel's performance was deficient and

17   that the deficient performance prejudiced petitioner's defense. *Strickland*, 466 U.S. at 688. To

18   prove deficient performance, petitioner must demonstrate that counsel's representation fell

19   below an objective standard of reasonableness under prevailing professional norms. *Ibid.* To

20   prove counsel's performance was prejudicial, petitioner must demonstrate a "reasonable

21   probability that, but for counsel's unprofessional errors, the result of the proceeding would have

22   been different. A reasonable probability is a probability sufficient to undermine confidence in

23   the outcome." *Ibid.* at 694.

24         The United States Supreme Court and the Ninth Circuit have affirmed that adequate

25   counsel in a capital case has an "obligation to conduct a thorough investigation of the

26   defendant's background." *Wiggins*, 539 U.S. at 522. At a minimum, counsel must conduct a

27   reasonable investigation enabling him or her to make informed decisions as to how best

28   represent his or her client. *Sanders*, 21 F.3d at 1457.

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

Although counsel is obligated to investigate a capital defendant's background, it is:

> clearly within the 'wide range of professionally competent assistance' for [defense counsel] to choose not to present a psychiatric defense theory that might conflict with [other defenses and/or mitigation]. It is also acceptable trial strategy to choose not to call psychiatrists to testify when they can be subjected to cross-examination based on equally persuasive psychiatric opinions that reach a different conclusion.

*Harris v. Vasquez*, 949 F.2d 1497, 1525 (9th Cir. 1990).

Here, petitioner has not established that his defense counsel failed to conduct an adequate investigation into his mental health. The record establishes that on May 28, 1986, well before petitioner's trial began in March 1988, defense counsel retained psychiatrist Dr. George Wilkinson to conduct an examination of petitioner (Exh. 21 of App. No. 16). As petitioner acknowledges, Dr. Wilkinson concluded prior to trial that there was no viable mental defense. Petitioner's Amended Reply to Respondent's Answer to Third Amended Petition at 17.

In August 1986, defense counsel also retained psychologist Dr. Albert Fricke, who conducted psychological testing of petitioner (Exhs. 23 and 49 of App. No. 16). In addition, defense counsel sent an investigator to interview Dr. Arthur Mattocks, a mental health professional who had treated petitioner at the California Medical Facility (Exh. 24 of App. No. 16). Finally, defense counsel retained Dr. Hugh Ridlehuber to evaluate petitioner for ADHD in February 1988 (approximately one month before the start of the guilt-phase trial) at the suggestion of Drs. Wilkinson and Fricke, because Dr. Ridlehuber was considered a local expert on the subject (Exhs. 50 & 51 of App. No. 16). Dr. Ridlehuber was retained after the guilt phase as well to conduct an in-depth examination of petitioner and to testify regarding his mental health at the penalty phase. None of the doctors testified at the guilt phase.

The gravamen of petitioner's claim is that his counsel ought to have retained Dr. Ridlehuber earlier and instructed him to conduct a full examination of petitioner prior to the guilt phase. While Dr. Ridlehuber testified at the penalty phase that petitioner suffered a borderline personality disorder, he also testified that he found no evidence of organic brain dysfunction or schizophrenia (RT 6757, 6769, 6796-97). He has since stated, however, in a

United States District Court

For the Northern District of California

1   declaration that was before the California Supreme Court at the time it considered and rejected

2   this claim, that had he been able to thoroughly examine petitioner prior to the guilt phase, he

3   would have "advised defense counsel to seriously consider legal insanity as a defense during the

4   guilt phase of trial" (Exh. No. 50 of App. No. 16 at 5).

5       The investigation conducted by counsel was reasonable under the circumstances.  *See*

6   *Siripongs v Calderon*, 133 F.3d 732, 736 (9th Cir. 1998) (stating the "[t]he relevant inquiry

7   under *Strickland* is not what defense counsel could have pursued, but rather whether the choices

8   made by defense counsel were reasonable.")  The record confirms that petitioner's counsel

9   explored the possibility of a mental defense by retaining and consulting with multiple mental

10  health professionals.  Dr. Ridlehuber acknowledged that neither Dr. Fricke nor Dr. Wilkinson

11  believed that there was a psychiatric defense available to petitioner (Exh. 51 of App. No. 16 at

12  3), and it was reasonable for defense counsel to rely on their expertise.  Additionally, Dr.

13  Fricke has averred — in a declaration that was before the California Supreme Court at the time

14  it considered and rejected this claim — that he met with petitioner three times and conducted

15  various tests.  Dr. Fricke has further declared that based on the testing and analysis that he

16  performed on petitioner, as well as that done by Dr. Wilkinson, Dr. Fricke did not find, *inter*

17  *alia* "cognitive deficits suggestive of other neurological problems" (Exh. 49 of App. No. 16 at

18  3-4).  The fact that Dr. Ridlehuber now declares that he would have suggested the consideration

19  of  a defense of legal insanity had he been retained earlier does not mean that the investigative

20  choices that counsel *did* make were unreasonable, and petitioner can cite to no decisions so

21  establishing.

22      "In assessing the reasonableness of an attorney's investigation, . . . a court must consider

23  not only the quantum of evidence already known to counsel, but also whether the known

24  evidence would lead a reasonable attorney to investigate further."  *Wiggins*, 539 U.S. at 537.

25  Having reviewed the record of this case, this order finds that it was reasonable for petitioner's

26  counsel not to retain additional mental health professionals, and there was no cause for counsel

27  to have retained Dr. Ridlehuber prior to the time that they did.  That counsel arranged for

28  multiple mental health professionals to evaluate petitioner confirms that they considered a

United States District Court

For the Northern District of California

1    mental defense well before trial commenced.  A statement by Dr. Ridlehuber that he may have

2    disagreed with the other experts had he been retained earlier does not establish ineffective

3    assistance of counsel.  As the Supreme Court has recognized, "psychiatrists disagree widely and

4    frequently on what constitutes mental illness," *Ake v. Oklahoma*, 470 U.S. 68, 81 (1985), and

5    *Strickland* and its progeny command only that defense counsel conduct a thorough and

6    reasonable investigation, not that they continue to consult with experts indefinitely until one is

7    found to support a particular defense.

8            Accordingly, this order finds and concludes that petitioner has not demonstrated that his

9    counsel were deficient in their investigation of his mental health nor in their conduct regarding

10   potential presentation of mental health evidence at his guilt phase trial.  While it is not required

11   to do so, this court also finds that petitioner cannot show prejudice as a result of counsel's

12   actions.  The United States Supreme Court has never required defense counsel to pursue every

13   nonfrivolous claim or defense, regardless of its merit, viability, or realistic chance of success.

14   *Knowles v. Mirzayance*, 556 U.S. 111, 125, 127 (2009).  And attempting to establish an insanity

15   defense at the guilt phase trial may well have opened the door to the prosecution introducing

16   evidence of petitioner's history of violent sex offenses, thereby negating any possible advantage

17   of an insanity defense.  *See*, *e.g. Brodit v. Cambra*, 350 F.3d 985, 994 (9th Cir. 2003) (finding

18   that state court reasonably concluded that trial attorney provided effective assistance of counsel

19   where attorney declined to present evidence favorable to defense out of concern that it would

20   open door to unfavorable evidence).

21           Because petitioner cannot establish either that his counsel's performance was deficient

22   or that any alleged deficiencies were prejudicial, and given that a reviewing court must indulge

23   a strong presumption that counsel's conduct falls within the wide range of reasonable

24   professional assistance, petitioner has not satisfied the requirements of Section 2254(d) and

25   both his claim and his request for an evidentiary hearing must be denied.  *Strickland*, 466 US at

26   688; *Sanders*, 21 F.3d at 1456.  Respondent's motion for summary judgment on this claim is

27   granted.

28   **2.      CLAIM 2**

United States District Court

For the Northern District of California

1    In Claim 2, petitioner maintains that his trial attorneys were ineffective for failing to

2    investigate and present mitigating psychiatric evidence at the penalty phase trial.  Specifically,

3    petitioner argues that trial counsel contacted Dr. Ridlehuber (who testified at the penalty phase)

4    too late and failed to provide him with important evidence.  As a result, according to petitioner,

5    strong mitigating evidence was not presented to the penalty phase jury.  This claim was raised

6    in petitioner's first state habeas petition and denied on the merits in a summary opinion by the

7    California Supreme Court.

8    Petitioner is unable to cite to any clearly established federal law that would entitle him

9    to relief, and a review of the record does not demonstrate that the state court was objectively

10   unreasonable in denying this claim.  As discussed *supra*, in order to establish ineffective

11   assistance of counsel, petitioner must show both that counsel's performance was deficient and

12   that the deficient performance prejudiced petitioner's defense.  *Strickland*, 466 U.S. at 688.  To

13   prove deficient performance, petitioner must demonstrate that counsel's representation fell

14   below an objective standard of reasonableness under prevailing professional norms.  *Ibid.*  To

15   prove counsel's performance was prejudicial, petitioner must demonstrate a "reasonable

16   probability that, but for counsel's unprofessional errors, the result of the proceeding would have

17   been different.  A reasonable probability is a probability sufficient to undermine confidence in

18   the outcome." *Ibid.* at 694.

19   Trial counsel has a duty to investigate in capital penalty phase proceedings.  *Summerlin*

20   *v. Schriro*, 427 F.3d 623, 629-30 (9th Cir. 2005).  Our Court of Appeals has also held that, in

21   order to prepare for the penalty phase of a capital trial, capital counsel "must conduct sufficient

22   investigation and engage in sufficient preparation to be able to present and explain the

23   significance of all the mitigating evidence." *Mayfield v. Woodford*, 270 F.3d 915, 927 (9th Cir.

24   2002 (*en banc*) (citations omitted).

25   This order has already addressed petitioner's contention that Dr. Ridlehuber was hired

26   too late in its discussion of Count 1, *supra*.  Petitioner's attorneys retained a psychiatrist and a

27   psychologist, and then Dr. Ridlehuber himself examined petitioner and testified extensively at

28   the penalty phase.  In fact, Dr. Ridlehuber himself testified that he interviewed and examined

15

United States District Court

For the Northern District of California

1   petitioner for 12 hours and researched the case for an additional 14 hours (RT 6755).   The

2   record does not reflect, however, that Dr. Ridlehuber indicated to counsel at the time he was

3   retained or at the time of the penalty phase trial that he believed that he had not had adequate

4   time to examine petitioner or that he had been retained too late to perform a thorough

5   evaluation.

6        Trial counsel in capital cases are required to conduct a thorough investigation of a

7   defendant's background, but they are *not* required to hire any particular mental health

8   professional, nor, as stated, are they required to consult multiple doctors until one is found who

9   will advocate a psychiatric defense.  Given counsel's retention of multiple mental health experts

10  and the corresponding investigation into petitioner's mental health, petitioner cannot

11  demonstrate that it was ineffective assistance for his counsel not to have specifically retained

12  Dr. Ridlehuber at an earlier time.   *Strickland*, 466 U.S. at 688; *Siripongs*, 133 F.3d at 736.

13       Petitioner also argues that his trial counsel did not properly prepare Dr. Ridlehuber or

14  provide him with necessary information about petitioner.  Inadequate preparation of a defense

15  mental health expert witness can amount to deficient performance.  *See, e.g., Bean v. Calderon*,

16  163 F.3d 1079, 1078-81 (9th Cir. 1998).  Moreover, counsel in a capital case have a duty to

17  provide background information to their penalty phase mental health expert, even if the expert

18  does not request such evidence.  *Wallace v. Stewart*, 184 F.3d 1112, 1118 (9th Cir. 1999).

19       Here, however, defense counsel *did* investigate petitioner's background and provided

20  Dr. Ridlehuber with multiple sources of information about petitioner.  Dr. Ridlehuber testified

21  that he reviewed petitioner's family history, information from a doctor who treated petitioner as

22  a child, and reports from a defense investigator who had interviewed a number of petitioner's

23  family members (RT 6755-6818).  He interviewed both Drs. Fricke and Wilkinson — the

24  psychologist and psychiatrist who had evaluated petitioner prior to the guilt phase — and

25  reviewed petitioner's treatment in the California Medical Facility (RT 6783-6803).  Dr.

26  Ridlehuber's testimony also confirms that he knew about the history of violence, alcoholism

27  and sexual abuse in petitioner's family and about incidents where petitioner's mother believed

28  she attempted to drown petitioner (RT 6760-6812).  Dr. Ridlehuber stated that petitioner

United States District Court

For the Northern District of California

1   presented a reliable, complete and detailed picture of himself (RT 6818); Dr. Ridlehuber also

2   noted that he was "compulsive" when evaluating a patient and preferred to have as many

3   sources of information as possible, but never indicated that he felt he did not have adequate

4   information to evaluate petitioner (RT 6755-6798).

5        Petitioner's assertion that earlier retention of Dr. Ridlehuber might have led to a different

6   diagnosis of petitioner is belied by Dr. Ridlehuber's own testimony at trial and the factual

7   record.  For example, he declares that "[t]here is now information concerning the Rowland

8   family's history of violence, alcoholism, and sexual abuse," (Exh. No. 50 of App. No. 16 at 7),

9   but, as discussed above, the record confirms that Dr. Ridlehuber knew of these conditions and

10  stated that they may have contributed to petitioner's mental health (RT 6760-61).  Dr.

11  Ridlehuber also declares that, had he had additional information, he would have performed

12  additional tests to determine whether petitioner had suffered organic brain damage (Exh. No. 50

13  of App. No. 16 at 4-5. Exh. No. 51 at 6-11).  Dr. Ridlehuber testified, however, that he tested

14  petitioner for organic brain damage and found none (RT 6769-96); that he now would like to

15  perform additional tests does not mean counsel's performance was deficient.

16       Petitioner fails to demonstrate that his counsel were ineffective in preparing for the

17  penalty phase of his trial.  As the record reflects and the discussion above confirms, petitioner's

18  counsel retained Dr. Ridlehuber in addition to other mental health experts, and Dr. Ridlehuber

19  testified extensively on petitioner's behalf at the penalty phase.  Dr. Ridelhuber's own

20  testimony confirms that his examination of petitioner was thorough and that he was provided

21  with extensive records and information about petitioner's family background, criminal

22  background, and health history.  Dr. Ridlehuber also indicated that his examination of petitioner

23  was extensive and did not state, at the time, that he had been retained too late to conduct an

24  adequate examination and render his professional opinion.  Accordingly, this order finds and

25  concludes that petitioner's trial attorneys fulfilled their duty to seek out background information

26  and provide it to the penalty phase mental health expert.  *See Wallace*, 184 F.3d at 1118.

27       This order has concluded that counsel's investigation of petitioner's background and

28  counsel's investigation of petitioner's mental health status were reasonable under the

United States District Court

For the Northern District of California

1    circumstances and did not constitute deficient performance.  As such, this order is not required

2    to conduct a prejudice analysis of those claims.  *See, e.g., Siripongs*, 1333 F.3d at 737.

3    Nonetheless, the court finds that, even had counsel's performance been deficient, none of the

4    alleged errors were prejudicial to petitioner's penalty phase defense.  Any additional evidence

5    of petitioner's family background appears to be duplicative of that already in Dr. Ridlehuber's

6    possession at the time of trial, since he testified as to violence, alcoholism and sexual abuse in

7    petitioner's family.

8         Moreover, the government's case in aggravation was extremely strong.  The jury was

9    presented with evidence showing, for example, that petitioner had been convicted of mutliple

10   sexual assault felonies, including sodomy, against a 13-year old girl.  Petitioner cannot show

11   that additional testimony from Dr. Ridlehuber regarding his mental diagnoses or his family

12   background would been enough to overcome the strong case in aggravation or, given the

13   circumstances of the crime for which petitioner was convicted, would have persuaded the jury

14   to be lenient.  Petitioner has not demonstrated anything that sufficiently undermines the court's

15   confidence in the fairness of the death verdict.  *See*, *e.g.*, *Wong v. Belmontes*, 130 S.Ct. 383, 390

16   (2009) (finding no prejudice where the aggravation evidence was "simply overwhelming");

17   *Rhoades v. Henry*, 596 F.3d 1160, 1195 (9th Cir. 2010) (holding "that [petitioner's] newly

18   proffered facts . . . add too little, and the aggravating circumstances are too strong, to make it

19   reasonably probable that the sentencing decision would have been different but for counsel's

20   performance").  In sum, the order finds and concludes that there was no reasonable probability

21   that, absent counsel's alleged errors, the jury might have imposed a sentence of life without

22   parole instead of death.  Accordingly, this claim is denied, petitioner's request for an

23   evidentiary hearing is denied and summary judgment is granted to respondent.

24   **3.    CLAIM 3**

25        In Claim 3, petitioner maintains that the jury speculated that, if given a sentence of life

26   without parole ("LWOP"), petitioner might still be released from prison.  According to

27   petitioner, the jury considered this as a factor supporting a sentence of death and committed

28   misconduct as a result.  This claim was raised in petitioner's first state habeas petition and

1    denied by the California Supreme Court on the merits in a summary opinion.

2          "[W]here a state court's decision is unaccompanied by an explanation, the habeas

3    petitioner's burden still must be met by showing there was no reasonable basis for the state

4    court to deny relief." *Richter*, 131 S. Ct. at 784.  Petitioner is unable to meet this burden.

5          Petitioner is unable to cite to any clearly established federal law that would entitle him

6    to relief, and a review of the record does not demonstrate that the state court was objectively

7    unreasonable in denying this claim.  Instead, petitioner cites to decisions such as *Furman v.*

8    *Georgia*, 408 U.S. 238 (1972) and *Mattox v. United States*, 146 U.S. 140 (1892) for the general

9    principle that capital juries are precluded from considering outside evidence.

10         These decisions do not support petitioner's claim that it was reversible misconduct for

11   the jury to allegedly speculate that a sentence of LWOP might mean that petitioner could still be

12   released from prison at some point.  While there is no decision directly on point, the Supreme

13   Court has considered the constitutionality of California's *Briggs* instruction, which informed

14   capital jurors that the state governor could commute or modify a sentence of LWOP, but did not

15   inform capital jurors that a sentence of death could also be commuted or modified.  *California*

16   *v. Ramos*, 463 U.S. 992 (1983).  The Court upheld the instruction, finding that a jury's

17   consideration of the commutation power did not undermine the jury's sentencing responsibility

18   nor "impermissibly inject an element too speculative for the jury's deliberation;" furthermore,

19   failure to inform the jury of the gubernatorial power to also commute death sentences did not

20   render the instruction unconstitutional.  *Ibid.* at 1012-13.

21         Petitioner is correct that a *Briggs* instruction was not given in his case.  Nonetheless,

22   *Ramos* is relevant.  If the Supreme Court has held that a capital jury may be specifically

23   instructed that it is allowed to consider gubernatorial commutation powers of a LWOP sentence,

24   then petitioner cannot –  absent clearly established federal law to the contrary – demonstrate

25   that the jury's speculation regarding such a possibility is prejudicial error.  Petitioner cannot

26   meet the requirements of Section 2254(d), and respondent is entitled to summary judgment on

27   this claim.

28   **4.      CLAIM 4**

United States District Court
For the Northern District of California

In Claim 4, petitioner alleges that one of his attorneys at trial, Charles Pierpont, had a conflict of interest that was not revealed to petitioner or waived by him. According to petitioner, this conflict violated his rights to conflict-free counsel under the Fifth, Sixth, Eighth and Fourteenth Amendments. This claim was raised in petitioner's first state habeas petition and was denied on the merits by the California Supreme Court.

Petitioner alleges that attorney Pierpont knew Detective Mifflin Singleton, a chief investigating officer and testifying witness in the case against petitioner, from his time as a Deputy District Attorney in the San Mateo District Attorney's Office. According to petitioner, Detective Singleton and attorney Pierpont remained friends during the time of petitioner's trial, and attorney Pierpont or his legal partner had represented Detective Singleton in several civil suits, including a divorce action. This relationship was allegedly not revealed to petitioner. Petitioner concedes that Pierpont's representation of Singleton terminated in October 1986, before the commencement of trial in this case; Pierpont did, however, cross-examine Singleton in the preliminary hearing on September 15, 1986. Petitioner maintains that, because Singleton was a social friend and legal client of Pierpont, he had an actual conflict of interest that prejudiced petitioner's defense.

The Sixth Amendment's right to conflict-free counsel is violated only if the conflict "adversely affected" trial counsel's performance. *Alberni v. McDaniel*, 458 F.3d 860, 870 (9th Cir. 2006). "[A]n actual conflict of interest mean[s] precisely a conflict that affected counsel's performance – as opposed to a mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002) (emphasis omitted).

A conflict of interest can arise when counsel represents multiple defendants whose interests are hostile to one another. In order to establish a violation of the Sixth Amendment, a petitioner "who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *See Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980) (footnote omitted); *accord Mickens*, 535 U.S. at 171; *Paradis v. Arave*, 130 F.3d 385, 391 (9th Cir. 1997); *United States v. Del Muro*, 87 F.3d 1078, 1080 (9th Cir. 1996); *Sanders*, 21 F.3d at 1452. An "actual conflict" is not separate from an "adverse effect;" rather, it is defined as one

20

**United States District Court**
For the Northern District of California

1  which adversely affects the lawyer's performance.  *Earp v. Ornoski*, 431 F.3d 1158, 1183 (9th

2  Cir. 2005) (quoting *Mickens*, 535 U.S. at 172 n.5).

3       An "actual conflict of interest" only occurs when counsel "actively represented

4  conflicting interests."  *Strickland*, 466 U.S. at 692.  A theoretical or potential conflict is

5  insufficient to constitute actual conflict; instead counsel must have actively represented

6  conflicting interests.  *Cuyler*, 446 U.S. at 350 (holding that "the possibility of conflict is

7  insufficient to impugn a criminal conviction");  *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.

8  2000), *amended*, 253 F.3d 1150 (9th Cir. 2001); *Morris v. California*, 966 F.2d 448, 455 (9th Cir.

9  1991).  A petitioner must prove an actual conflict through a factual showing in the record.

10  *Bragg*, 242 F.3d at 1087; *Morris*, 966 F.2d at 455.

11       Petitioner urges a finding of an "actual conflict" and thus a presumption of prejudice

12  based on attorney Pierpont's relationship with Detective Singleton.  The Supreme Court,

13  however, has applied the presumption only to multiple-representation cases, such as those cases

14  where attorneys were representing multiple defendants at the same trial or defendants charged

15  with the same murders in separate trials.  *See, e.g. Cuyler*, 446 U.S. at 340-50.  Petitioner can

16  cite to no Supreme Court cases finding an actual conflict of interest where, as here, defense

17  counsel previously represented a state witness in a civil matter completely unrelated to the

18  criminal matter.  Furthermore, petitioner also cannot demonstrate that any alleged conflict

19  "significantly affected counsel's performance."  *Mickens*, 533 U.S. at 172-73.  As such,

20  petitioner cannot demonstrate that an independent review of the record shows that the

21  California Supreme Court's decision denying this claim was objectively unreasonable under

22  clearly established federal law, or was based on an unreasonable determination of the facts.

23  Summary judgment on this claim must be granted to respondent.

24  **5.    CLAIM 5**

25       In Claim 5, petitioner alleges that both of his trial attorneys had an unconstitutional

26  conflict of interest because they were both previously employed by the same district attorney's

27  office that prosecuted petitioner.  This claim was raised in petitioner's first state habeas petition

28  and was denied on the merits by the California Supreme Court.

Petitioner maintains that his attorneys, Charles Pierpont and James Courshon, were former Deputy District Attorneys who had worked at the San Mateo District Attorney's Office at the same time as Martin Murray, the Deputy District Attorney responsible for prosecuting petitioner. According to petitioner, we should infer: 1) that his attorneys' previous employment caused his attorneys to view his case from the perspective of a prosecutor and; 2) that his attorneys had a personal relationship with prosecutor Murray that compromised their loyalty to petitioner and adversely impacted their conduct as trial counsel.

This claim is without merit. As discussed *supra*, in order to prevail on a claim of actual conflict of interest, a petitioner must demonstrate that his counsel "actively represented conflicting interests." *Strickland*, 466 U.S. at 692; *Cuyler*, 446 U.S. at 350 (holding that "the possibility of conflict is insufficient to impugn a criminal conviction"). A petitioner also must demonstrate that any alleged conflict "significantly affected counsel's performance." *Mickens*, 533 U.S. at 172-73. This petitioner cannot do. In addition, he cannot cite to any clearly established federal law holding that a defense attorney's prior employment as a prosecutor amounts to a conflict of interest, nor can he show that the state court decision denying this claim was based on an unreasonable determination of the facts. Accordingly, this claim must be denied and summary judgment is granted to respondent.

**6.   CLAIM 6**

In Claim 6, petitioner maintains that he was denied a fair trial, due process of law, the effective assistance of counsel and the right to present a defense when the trial court ruled that if the entirety of petitioner's confession to Susan Lanet was admitted, evidence of petitioner's prior convictions would also be allowed into evidence. A prior order has already held that this claim is procedurally defaulted. *See* Order Granting Motion to Dismiss Claims 6, 8 and 10 As Defaulted, Aug. 15, 2002. Furthermore, another order has previously determined that petitioner cannot show either cause and prejudice or a miscarriage of justice sufficient to overcome the default. *See* Order Regarding Cause and Prejudice, Sept. 14, 2010. Petitioner has submitted nothing additional that would justify reconsideration of any previous decisions. Accordingly, this claim is denied and summary judgment is granted to respondent.

22

**United States District Court**
For the Northern District of California

1    **7.**    **CLAIM 7**

2    In Claim 7, petitioner maintains that he was denied effective assistance of counsel at the

3 penalty phase of his trial.  Specifically, he maintains that his attorneys should have elicited

4 testimony from Susan Lanet regarding certain of petitioner's statements concerning an

5 argument with the victim.  The California Supreme Court denied this claim in a reasoned

6 opinion on direct appeal, as follows:

7                B.    *Ineffective Assistance of Counsel*

8        Defendant contends that trial counsel provided him with ineffective
   assistance under the Sixth Amendment to the United States Constitution by

9   failing to call Susan Lanet as a witness in order to elicit his extrajudicial
   statement to the effect that he killed [Geri] after a fight unrelated to sex.

10

11       To succeed in his claim, defendant must show (1) deficient performance
   under an objective standard of professional reasonableness and (2) prejudice

12   under a test of reasonable probability.  (E.g., *People v. Ledesma* (1987) 43 Cal
   3d 171, 215-18 [parallel citations omitted].)

13       Defendant fails in his attempt.  Counsel's performance was not deficient
   because the omission was not unreasonable.  In view of the evidence concerning

14   the circumstances for the present offenses adduced at the guilt phase, counsel
   could properly have declined to reopen the matter – especially through a self-

15   serving, out-of-court statement of the defendant.  Moreover, even if counsel's
   performance has been deficient, it could not have subjected defendant to

16   prejudice.  There is no reasonable probabilty that the introduction of a statement
   of the sort here would have affected the outcome.[4]

17 *Rowland*, 4 Cal. 4th at 273-74.

18    Petitioner cannot demonstrate that anything in the state court's reasoned opinion

19 denying this claim is contrary to, or an unreasonable application of, clearly established United

20 States Supreme Court law.  Nor can he show that the opinion was based on an unreasonable

21 determination of the facts.  As the state court concluded, counsel's performance was not

22 deficient because it was not unreasonable for counsel to decide not to elicit this testimony from

23 Lanet.  *See Strickland*, 466 U.S. at 687-688.  Petitioner cannot show that testimony from Lanet

24

25 ——————————————

26    [4] [Opinion Footnote 15] Defendant claims that trial counsel's ineffective assistance
 under the Sixth Amendment entailed the violation of various provisions of the United States

27 Constitution, including the due process clauses of the Fifth and Fourteenth Amendments; the
 trial clause of the Sixth Amendment; and the cruel and unusual punishments clause of the

28 Eighth Amendment.  But as shown, counsel's assistance was *not* ineffective.
 . . .

1   that petitioner killed Geri after a fight, but that the fight was unrelated to sex, would have been

2   helpful to his defense.   In addition, even if petitioner had been able to show that counsel's

3   behavior was deficient in this regard, he is unable to demonstrate prejudice.  There is no

4   reasonable probability that had this testimony been elicited, the jury would have been more

5   likely to return a verdict of life without parole instead of death.  *Strickland*, 466 U.S. at 694.

6   Accordingly, this claim must be denied and summary judgment is granted to respondent.

7   Petitioner's request for an evidentiary hearing on this claim is also denied.

8   **8.    CLAIM 8**

9          In Claim 8, petitioner maintains that his due process and confrontation clause rights

10  were violated by evidence of certain of the victim's statements.  A prior order has already held

11  that this claim is procedurally defaulted.  *See* Order Granting Motion to Dismiss Claims 6, 8

12  and 10 As Defaulted, Aug. 15, 2002.  Furthermore, a prior order has previously determined that

13  petitioner cannot show either cause and prejudice or a miscarriage of justice sufficient to

14  overcome the default.  *See* Order Regarding Cause and Prejudice, Sept. 14, 2010.  Petitioner has

15  submitted nothing additional that would justify reconsideration of any previous decisions.

16  Accordingly, this claim is denied and summary judgment is granted to respondent.

17  **9.    CLAIM 9**

18         In Claim 9, petitioner maintains that there was insufficient evidence to support both the

19  rape conviction and the special circumstance of murder during the commission of rape.  The

20  California Supreme Court denied this claim in a reasoned decision on direct appeal, as follows:

21             E.    *Sufficiency of the Evidence for the Rape Conviction*

22                 Defendant contends that the evidence is insufficient to support his
       conviction for rape.

23
                 In reviewing the sufficiency of evidence under the due process clause of
24      the Fourteenth Amendment to the United States Constitution, the question we
        ask is "whether, after viewing the evidence in the light most favorable to the
25      prosecution, *any* rational trier of fact would have found the essential elements of
        the crime beyond a reasonable doubt."  (*Jackson v. Virginia* (1979) 443 U.S.
26      307, 319 [parallel citations omitted].)  To our mind, we must ask the same
        questions when we conduct such review under the due process clause of article I,
27      section 15 of the California Constitution.

28                 A state court conviction that is not supported by sufficient evidence

violates the due process clause of the Fourteenth Amendment and is invalid for that reason. (*Jackson v. Virginia*, *supra,* 445 U.S. at pp. 313-324 [parallel citations omitted].) In our view, a California conviction without adequate support separately and independently offends, and falls under, the due process clause of article I, section 5.

Defendant's claim is to the following effect: although the evidence is sufficient to prove that he engaged in sexual intercourse with [Geri], it is insufficient to prove that he did so while she was alive *or* without her consent.

Of course, in rape the act of sexual intercourse must involve a live victim. (*People v. Kelly* (1992) 1 Cal. 4th 495, 524 [parallel citations omitted]) who does not effectively consent (see Penal Code, § 261).

The evidence is more than sufficient on each point. To support our conclusion, we need cite only this. There was expert testimony that before death, [Geri] suffered a bruise "an inch or two above the [right] kneecap and somewhat towards the inside part of the thigh"; the location of the injury was "unusual"; such a bruise, however, could have been caused "if someone used a knee . . . to force the legs apart." Relying on that testimony, as it would plainly have been entitled to, a rational trier of fact would surely have found beyond a reasonable doubt that at the time defendant engaged in sexual intercourse, [Geri] was alive *and* did not consent.

Defendant argues to the contrary. His words establish nothing more than that some rational trier of fact might have made a different finding. That is not enough.[5]

*Rowland*, 4 Cal. 4th at 269-70.

The rejection of this claim by the state court was neither contrary to nor an unreasonable application of clearly established United States Supreme Court authority. In addition, the state court's decision was not based on an unreasonable determination of the facts. In his opposition to respondent's motion, petitioner does little more than cite to *Jackson v. Virginia*, 443 U.S. 307 (1979), the controlling decision regarding this issue and the decision relied upon by the California Supreme Court. He does not cite to any controlling authority demonstrating that the state court's decision was unreasonable, nor does he cite to any evidence in the record indicating that the state court relied on an unreasonable determination of the facts. To the contrary, as the California Supreme Court demonstrated, there was more than sufficient

---

[5] [Opinion Footnote 8] Defendant claims that his rape conviction, [if] based on evidence that is insufficient for the due process clause of the Fourteenth Amendment, is invalid not only under the federal constitutional provision but under others as well – including some unspecified clause of the Sixth Amendment and, perhaps, the cruel and unusual punishments clause of the Eighth Amendment. The conviction is *not* based on insufficient evidence.

United States District Court

For the Northern District of California

1    evidence for a rational trier of fact to conclude both that Geri was alive at the time of

2    intercourse and that she did not consent.  *Rowland*, 4 Cal. 4th at 270.  Accordingly, petitioner

3    cannot meet his burden under Section 2254(d), and respondent is entitled to summary judgment

4    on this claim.

5    **10.    CLAIM 10**

6          In Claim 10, petitioner maintains that he was denied effective assistance of counsel

7    when his counsel failed to object to evidence regarding future conditions of confinement.  The

8    court has already held that this claim is procedurally defaulted.  *See* Order Granting Motion to

9    Dismiss Claims 6, 8 and 10 As Defaulted, Aug. 15, 2002.  Furthermore, the court has previously

10   determined that petitioner cannot show either cause and prejudice or a miscarriage of justice

11   sufficient to overcome the default.  *See* Order Regarding Cause and Prejudice, Sept. 14, 2010.

12   Petitioner has submitted nothing additional that would justify the reconsideration of any

13   previous decisions.  Accordingly, this claim is denied.

14   **11.    CLAIM 11**

15         In Claim 11, petitioner maintains that alleged misconduct of the prosecutor during

16   closing argument violated petitioner's rights under the Fifth, Sixth, Eighth and Fourteenth

17   Amendments.  Specifically, petitioner contends that the prosecutor improperly expressed his

18   personal opinion regarding the appropriateness of the death penalty.  This claim was denied by

19   the California Supreme Court in a reasoned opinion on direct appeal, as follows:

20              Seventh, defendant complains of the concluding comments in the
            prosecutor's summation.

21

22              ". . . And I've made a long practice in my life never to ask others to do
            what I would not feel is right, and what I would not do myself.

23              "I believe strongly in the sanctity of human life, and I would not ask you
            to do something that I would not do.  And I believe in human life.  But I also
24          believe that society has the right, in fact the duty to protect itself and to see that
            justice is done in the appropriate cases.

25

26              "And based in the system of justice where the punishment should fit the
            crime and the criminal, based on the law in this case . . . , based on the savagery,
            and the brutality, and the horror of the crime against [Geri], based on his history
27          of past criminal activity involving violence which represents a man of extreme
            cruelty, depravity, and violence, I now stand before you, and with a full
28          realization of the awesome responsibility that's been entrusted to you and to me,

26

and with a full realization of the gravity and the enormity of what I am about to ask you, without reservation, without hesitation, I am asking that you return a verdict of death."

Outside the presence of the jury, defense counsel requested the court "to instruct the jury on one comment made by [the prosecutor]. And that went to his personal opinion in this matter concerning the sentence of death. I think that's improper under the cases. And I would ask the court to admonish the jury that they should not consider [the prosecutor's] personal feelings in arriving at the appropriate penalty."

The court refused. "I think the prohibition goes to personal belief in evidence, evidence not before the jury. And he very carefully didn't do that. I know of no rule of law to support the action you're requesting. I think it's an appropriate argument. He very carefully didn't imply that he knows something that the jury doesn't know. I think it's an appropriate argument.

We agree. True, a prosecutor may not "state his personal belief regarding . . . the appropriateness of the death penalty, *based on facts not in evidence.*" (*People v. Ghent* (1987) 43 Cal. 3d 739, 772 [parallel citations omitted]. But he may make a statement of this sort if, as here, it is "based solely on the facts of record." (*Ibid.*) There is no reasonable likelihood that the jury understood the words otherwise. Of course, "prosecutors should refrain from expressing personal views which might unduly inflame the jury against the defendant." (*Ibid.*) The views expressed by the prosecutor in this case were not such.[6]

*Rowland,* 4 Cal. 4th at 280-81.

Respondent moves for summary judgment on Claim 11 on the grounds that, as detailed above, the California Supreme Court reasonably considered and rejected petitioner's contentions on the merits, thus foreclosing relief under 28 U.S.C. 2254(d). Respondent also asserts that the state court's findings of facts are entitled to deference pursuant to 28 U.S.C. 2254(e)(1).

Although this Court disapproves of the comments by counsel (by injecting his personal views before the jury), respondent is correct on the standard. Petitioner is unable to cite to any clearly established federal law demonstrating that the state's court's conclusions were

---

[6] [Opinion Footnote 19] Defendant generally claims that defense counsel provided ineffective assistance in violation of the Sixth Amendment by failing to object to the various instances of "misconduct." . . . Further, he generally claims that the court committed error apparently under California law by neglecting to prevent or cure the "harm" arising therefrom *ex proprio motu*. . . . . There *was* no impropriety.

Defendant also claims that the various instances of "misconduct" entailed the violation of both California law and the United States Constitution. Again, there was no impropriety.

27

unreasonable.  The Supreme Court has held that when reviewing a habeas claim of prosecutorial misconduct, the relevant inquiry is not whether "the prosecutor's remarks were undesirable or even universally condemned."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citations omitted).  Rather, the issue "is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Id.* (citing *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)).

Here, as the trial court held and the California Supreme Court confirmed, the prosecutor's statements were based on evidence in the record.  Petitioner can cite to nothing indicating the statements were constitutionally improper under Supreme Court decisions, let alone that they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden*, 477 U.S. at 181 (citing *Donnelly*, 416 U.S. at 637).  Furthermore, none of the decisions cited by petitioner support his claim of prosecutorial misconduct here.  In *United States v. Young*, for example, the Supreme Court found that even though certain remarks by the prosecutor were inappropriate, they did not serve to "undermine the fundamental fairness of the trial and contribute to a miscarriage of justice" and thus did not require reversal.  470 U.S. 1, 16, 19  (1985).  In *Berger v. United States*, 295 U.S. 78 (1935), the Supreme Court found that certain statements made by the prosecutor constituted error because they referred to personal knowledge of the prosecuting attorney, in direct contrast to the instant case where the prosecutor's remarks were based on record evidence.  As such, respondent is entitled to summary judgment on Claim 11.

**12.   CLAIM 12**

In Claim 12, petitioner maintains: (1) that the prosecutor's remarks regarding the personal responsibility of the jury amounted to prosecutorial misconduct; and( 2) that his counsel's failure to object to the remarks was ineffective assistance under the Sixth Amendment.  The California Supreme Court addressed both prongs of this claim in a reasoned opinion on direct appeal, as follows:

> Second, defendant complains of certain unobjected-to comments in the prosecutor's summation that allegedly misled the jury on its role in determining penalty.

28

United States District Court
For the Northern District of California

In context, the message the prosecutor delivered was this: the jurors' function was judicial, not legislative; they had to decide whether the death penalty was the appropriate punishment in this case, not whether it should be available as a sanction in general.  That message, of course, was altogether sound.

We do not overlook – and certainly do not approve – remarks such as this: "We had a recent election in which several of our Supreme Court justices were perceived by the voters not to be applying [the death penalty] law.  They are gone now.  There's no question that it is the policy expressed by the will of the populace that there be a death penalty in California, and that it be carried out in appropriate cases."  Or this: "[T]he voters overwhelmingly approved the death penalty. . . ."

Nevertheless, there is no reasonable likelihood that the jury understood the challenged remarks as defendant asserts – and surely not in the way as to "minimize [its] sense of responsibility for determining the appropriateness of death" in violation of the Eighth Amendment to the United States Constitution as construed in *Caldwell v. Mississippi* (1985) 472 U.S. 320, 341 [parallel citations omitted]. . . . [7]

*Rowland*, 4 Cal. 4th at 276, 281.

Petitioner has failed to demonstrate that the state court decision was contrary to, or involved an unreasonable application of, clearly established law as determined by the United States Supreme Court.  *See* 28 U.S.C. 2254(d).  Nor has petitioner demonstrated that the state court decision relied on an unreasonable determination of the facts.  As detailed *supra*, prosecutorial remarks, even if they were "undesirable" or "universally condemned," do not rise to the level of reversible error unless they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden*, 477 U.S. at 181 (citing *Donnelly*, 416 U.S. at 637).  Petitioner argues that, under *Caldwell*, 472 U.S at 341, the prosecutor's comments alleviated the jurors of their individual responsibility for imposing a death sentence, violating the Eighth Amendment and resulting in reversible error.  The California Supreme Court squarely addressed *Caldwell*, however, and found that, taken as a whole, the prosecutor's argument did not mislead the jurors regarding their discretion in sentencing petitioner.

---

[7] [Opinion Footnote 19]  Defendant generally claims that defense counsel provided ineffective assistance in violation of the Sixth Amendment by failing to object to the various instances of [prosecutorial] "misconduct.". . . Further, he generally claims that the court committed error by neglecting to prevent or cure the "harm" arising therefrom *ex proprio motu*. . . . There *was* no impropriety.

United States District Court

For the Northern District of California

*Rowland*, 4 Cal. 4th at 276.  Rather, taken in context, the prosecutor's argument was an "altogether sound" message to the jury that its function was to decide whether the death penalty or LWOP was the appropriate penalty in petitioner's case.  *Ibid.*

Petitioner also cannot demonstrate that the state court's decision finding that there was no ineffective assistance of counsel was contrary to, or involved an unreasonable application of, clearly established federal law, or that it relied on an unreasonable determination of the facts. The decision of petitioner's counsel not to object to the prosecutor's statements was not constitutionally deficient.  As this court has already concluded, the state court was not unreasonable in finding that the prosecutor's comments did not rise to the level of misconduct. Given that there was no misconduct, any objection to the comments by petitioner's trial counsel would likely have been overruled.  *Strickland* and its progeny do not require that trial counsel make futile objections, and, thus, the decision of petitioner's counsel was reasonable under these circumstances.  *See Sanders*, 21 F.3d at 1456.

Furthermore, petitioner cannot demonstrate that he suffered any prejudice due to his counsel's failure to object to the jury instruction.  Given that any objection would have been futile, there is no reasonable probability that, had the objection been made, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 693-94.  Accordingly, petitioner's claim must be denied and summary judgment granted to respondent.

**13.   CLAIM 13**

In Claim 13, petitioner maintains: (1) that the prosecutor's remarks regarding the credibility of petitioner's mental health expert amounted to prosecutorial misconduct; and (2) that his counsel's failure to object to the remarks was ineffective assistance under the Sixth Amendment.

Prior orders have already found that petitioner's claim of prosecutorial misconduct is procedurally defaulted, and that petitioner is unable to demonstrate cause and prejudice sufficient to overcome the default (Docs. 163 and 252).  Accordingly, respondent is entitled to summary judgment on this portion of Claim 13.

Respondent is also entitled to summary judgment on the portion of Claim 13 alleging

United States District Court

For the Northern District of California

1   ineffective assistance of counsel based on the failure to object to the prosecutor's statements.

2   To begin with, there is no merit to petitioner's claim of prosecutorial misconduct.  The

3   prosecutor's remarks did not render the trial fundamentally unfair.  *Darden*, 477 U.S. at 181.

4   As noted by the California Supreme Court, the comments in question, though "harsh and

5   unbecoming," constituted reasonable inferences from the evidence.  *Rowland*, 4 Cal. 4th at 277.

6   As the state court reasonably found:

7           For instance, Dr. Ridlehuber [petitioner's expert mental health witness]
        himself admitted that "psychiatry is not an exact science"; that psychiatrists rely
8       on what they are told by their patients, who sometimes lie; that "two equally
        competent psychiatrists can conduct an examination on an individual and come
9       to different conclusions"; and that psychiatrists "can be fooled, and I've been
        fooled."  Also, as noted, there was evidence showing defendant's interest in
10      psychology and suggesting manipulation on his part.

11          . . .

12          In the challenged remarks, the prosecutor did not substantially misstate
        facts or go beyond the record.

13

14   *Rowland*, 4 Cal. 4th at 277.  Because there was no reversible misconduct on the part of the

15   prosecutor, it was not deficient performance for petitioner's counsel to fail to object.  *Strickland*

16   and its progeny do not require that trial counsel make futile objections, and, thus, the decision

17   of petitioner's counsel was reasonable under these circumstances.  *See Sanders*, 21 F.3d at

18   1456; *see also*, *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989) (finding that a challenge

19   to a futile objection fails both prongs of *Strickland*).  Furthermore, Petitioner cannot

20   demonstrate that he suffered any prejudice due to his counsel's failure to object to the jury

21   instruction.  Given that any objection would have been futile, there is no reasonable probability

22   that, had the objection been made, the result of the proceeding would have been different.

23   *Strickland*, 466 U.S. at 693-94.  Accordingly, petitioner's claim must be denied, and respondent

24   is entitled to summary judgment on Claim 13 in its entirety.

25   **14.    CLAIM 14**

26          In Claim 14, petitioner maintains: 1) that the prosecutor's remarks regarding testimony

27   of petitioner's relatives amounted to prosecutorial misconduct; and 2) that his counsel's failure

28   to object to the remarks was ineffective assistance under the Sixth Amendment.

As with Claim 13, previous orders have found that the prosecutorial misconduct prong of this claim is procedurally defaulted, and that petitioner is unable to demonstrate cause and prejudice sufficient to overcome the default (Docs. 163 and 252).  Accordingly, respondent is entitled to summary judgment on this portion of Claim 14.

Respondent is also entitled to summary judgment on the portion of Claim 14 alleging ineffective assistance of counsel based on the failure to object to the prosecutor's statements.  To begin with, there is no merit to petitioner's underlying claim of prosecutorial misconduct.  In addition to dismissing this claim on procedural grounds, the California Supreme Court reasonably found that it lacked merit, as follows:

> Fifth, defendant complains of the following unobjected-to comment in the prosecutor's summation: "And his mother – I think his mother understands justice to some extent.  Because when asked about anything she wanted to tell you, she really couldn't bring herself to tell you that he didn't deserve the death penalty based on the evidence that you had before you.  Instead, what she said was her religion says that there shouldn't be a death penalty."
>
> The challenged remark constituted a fair comment on the evidence.  There is no reasonable likelihood that the jury would have understood the works otherwise.
>
> Sixth, defendant complains of unobjected to comments in the prosecutor's summation to the effect that in determining penalty, the jury could consider evidence bearing on defendant's background but not his family's.
>
> The defendant's background is, of course, material to penalty.  That is true under California law [citations omitted] and the United States Constitution (see, e.g., *Eddings v. Oklahoma* (1982) 455 U.S. 104, 110 [subsequent citations omitted].  The conclusion follows from the proposition that "the sentencer . . . [may] not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record . . . that the defendant proffers as a basis for a sentence less that death."  (*Lockett v. Ohio*, *supra*, at p. 604 [additional citations omitted].)
>
> By contrast, the background of the *defendant's family* is of no consequence in and of itself.  That is because under both California law . . . and the United States Constitution . . . ., the determination of punishment in a capital case turns on the defendant's personal moral culpability.  It is the "*defendant's* character and record" that "the sentence . . . [may] not be precluded from considering" – not his *family's*.  (*Lockett v. Ohio*, *supra*, 438 U.S. at p. 604 [additional citations omitted]).
>
> To be sure, the background of the defendant's family is material if, and to the extent that, it relates to the background of defendant himself.  But that very point emerges from the challenged remarks.  For example, the prosecutor stated: "Again, think back and decide how much of this extremely emotional and painful testimony you heard about Guy Rowland's family applies to him rather

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

than other people.  The things that don't apply to him are not things you can consider in determining whether or not Guy Rowland is entitled to sympathy."  Thus – the prosecutor declared expressly – the background of defendant's family does not matter if it does not touch his own.  But – he implied – family background does count if it involves defendant himself.  There is no reasonable likelihood that the jury understood the words otherwise.[8]

*Rowland*, 4 Cal. 4th at 278-80.

Petitioner cannot demonstrate that the state court's reasoned decision was contrary to, or an unreasonable application of, clearly established United States Supreme Court law, or based on an unreasonable determination of the facts.  The state court addressed the controlling state and federal law and reasonably found that petitioner's claim lacked merit.  A failure to object cannot be deficient performance or prejudicial under *Strickland* when there is no reasonable likelihood that the objection was meritorious.  *See, e.g.* Sanders, 21 F.3d at 1456 (*Strickland* does not require that trial counsel make futile objections); *see also*, *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (finding that ineffective assistance of counsel claim based on defaulted Fourth Amendment claim required a showing that underlying Fourth Amendment claim was meritorious).  Given that any objection here would have been futile, there is no reasonable probability that, had the objection been made, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 693-94.  Accordingly, petitioner's claim must be denied, and respondent is entitled to summary judgment on Claim 14 in its entirety.

**15.   CLAIM 15**

In Claim 15, petitioner maintains that certain aspects of the California death penalty statutes are unconstitutional under the Fifth, Sixth and Eighth Amendments.  Specifically, he argues that the penalty phase jury instructions are deficient because they do not designate mitigating and aggravating factors, that the applicable statutes do not require proof beyond a reasonable doubt that aggravating factors have been proven and that the aggravating factors outweigh the mitigating factors, that the statutes do not require written findings as to the

---

[8] [Opinion Footnote 18] Defendant claims that defense counsel provided ineffective assistance in violation of the Sixth Amendment by failing to object to the "misconduct."  He also claims that the court committed error apparently under California law by neglecting to prevent or cure the harm arising therefrom *ex proprio motu*.  There *was* no impropriety.

aggravating factors relied upon by the jury, and that there is no procedure utilized by the trial

court regarding the jury's findings that allows meaningful review by other courts.  The

California Supreme Court addressed this claim in a reasoned opinion on direct appeal, as

follows:

> E.    *Constitutionality of the 1978 Death Penalty Law*
>
> Defendant contends that the 1978 death penalty law is facially invalid under the United States and California Constitutions, and hence that the judgment entered pursuant thereto is unsupported as a matter of law.  "[A]s a general matter at least, the 1978 death penalty law is facially valid under the federal and state charters.  In his argument here, defendant raises certain specific constitutional challenges.  But . . . in the . . . series of cases [beginning with *People v. Rodriguez* (1986) 42 Cal. 3d at pp. 1009-1010 [parallel citations omitted], we have rejected each and every one.  We see no need to rehearse or revisit our holdings or their underlying reasoning."  (*People v. Ashmus*, *supra*, 54 Cal. 3d at pp. 1009-1010, accord, *People v. Clair*, *supra*, 2 Cal. 4th at p. 691.)[9]

*Rowland*, 4 Cal. 4th at 283.

Petitioner cannot show that the state court's reasoned opinion is contrary to, or an

unreasonable application of, clearly established United States Supreme Court law.  Petitioner

also fails to demonstrate that the state court's opinion relied on an unreasonable determination

of the facts.  Tellingly, petitioner does not — and cannot — cite a single decision in support of

his argument that the California death penalty statutes are unconstitutional under federal law.

Without any citation to mandatory or persuasive authority in support of his argument, petitioner

cannot demonstrate that the state court's denial of this claim was objectively unreasonable.

Indeed, the state court's reasoned decision was consonant with clearly established

federal law.  For example, petitioner alleges that the penalty phase jury instructions are deficient

---

[9] [Opinion Footnote 22] We declare that "Whether or not expressly discussed, we have considered and rejected . . . all of the assignments of error presented in all of defendant's briefs."  (*People v. Sully* (1991) 53 Cal. 3d 1195, 1252 [parallel citations omitted].)

Having reviewed the record in its entirety, we conclude that the jury found that defendant actually killed, *and* intended to kill, [Geri] within the meaning of *Enmund v. Florida*, *supra*, 458 U.S. 782, 788-801 [parallel citations omitted].  We also conclude that these findings are amply supported and adopt them as our own.  Accordingly, we hold that imposition of penalty of death on defendant does not violate the Eighth Amendment to the United States Constitution.  (See *Cabana v. Bullock* (1986) 474 U.S. 376 [parallel citations omitted].)

United States District Court

For the Northern District of California

because they do not designate mitigating and aggravating factors.  In *Tuilaepa v. California*, however, the United States Supreme Court held that giving a penalty phase jury a unitary list of sentencing factors that does not designate which factors are mitigating and which are aggravating does not violate the Constitution.  512 U.S. 967, 978-79 (1994).  Moreover, our Court of Appeals has found that California's "death penalty statute's failure to label aggravating and mitigating factors is constitutional."  *Williams v. Calderon*, 52 F.3d 1465, 1484 (9th Cir. 1995) (citations omitted).

Because petitioner cannot meet his burden under Section 2254(d) of showing that the state court's decision was unreasonable, respondent is entitled to summary judgment on Claim 15.

**16.   CLAIM 16**

In Claim 16, petitioner maintains that his trial counsel's allegedly confusing and contradictory guilt phase closing argument amounted to ineffective assistance of counsel.  This claim was raised in petitioner's second state habeas petition and was denied in a summary decision on the merits and as untimely.

An independent review of the record reveals that the state court decision with respect to this claim was not objectively unreasonable.  In support of his argument that counsel's statements during closing argument amounted to ineffective assistance, petitioner cites to counsel's references to petitioner's drug use (RT 6071).  Petitioner concedes that facts regarding petitioner's drug use were admitted during trial and recognizes that reference to them were part of his counsel's "apparent attempt to persuade the jury that because of the deleterious effects of using methamphetamine petitioner did not form the requisite intent to commit first degree murder."  Third Amended Petition at ¶ 265.  Petitioner nonetheless argues that subsequent statements by counsel undermined counsel's effort to raise a reasonable doubt regarding petitioner's culpability by stating, *inter alia*, that drugs did not forgive petitioner's conduct, which petitioner's attorney also described as "criminal" (RT at 6082-83).  According to petitioner, his counsel's statements amounted to a concession of guilt and an abandonment of any viable theory of defense.  Respondent counters that counsel — because of the

35

United States District Court

For the Northern District of California

1   overwhelming evidence at trial that the victim was in fact killed during her time with petitioner

2   — was reasonably focused on lessening petitioner's culpability by arguing that a drug-induced

3   fight occurred after consensual sex and that, during the fight, the victim was killed.  According

4   to respondent, because petitioner cannot establish that his counsel's decision was unreasonable,

5   he cannot meet his burden under Section 2254(d).

6           Respondent is correct.  To prevail on the merits of this claim, petitioner would need to

7   establish that counsel's conduct so undermined the proper functioning of the adversarial process

8   that the trial cannot be relied upon as having produced a just result.  *Strickland,* 466 U.S. at 686.

9   This he cannot do.  A reviewing court must be particularly deferential to counsel's tactical

10  decisions in closing presentation because of the broad range of legitimate defense strategy at

11  that time.  *See, e.g., Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (*per curiam*) (counsel's

12  exclusion of some issues in closing did not amount to professional error of constitutional

13  magnitude where issues omitted were not so clearly more persuasive than those raised); *Davis v.*

14  *Woodford*, 384 F.3d 628, 650-51 (9th Cir. 2004).

15          In *United States v. Fredman*, 390 F.3d 1153, 1157-58 (9th Cir. 2004), for example, our

16  Court of Appeals concluded that counsel's decision during closing argument to concede certain

17  facts and "admit to some crimes" was a reasonable tactic "to avoid diminishing [counsel's]

18  credibility by arguing a lost cause."  In petitioner's case, similarly, the killing itself was not

19  realistically in dispute after the facts had been established at trial.  Thus, counsel's decision to

20  focus on lessening petitioner's culpability by arguing that while petitioner's behavior may have

21  been criminal, he did not have the requisite intent needed for a verdict of first-degree murder,

22  was reasonable.  Because petitioner cannot demonstrate that counsel's conduct during closing

23  argument amounted to deficient performance or resulted in prejudice, *Strickland*, 466 U.S. at

24  688, this claim must be denied.  Summary judgment is granted to respondent.

**17.   CLAIM 17**

26          In Claim 17, petitioner maintains that it was ineffective assistance for his trial counsel

27  not to investigate or present expert testimony regarding petitioner's alleged voluntary

28  intoxication via ingestion of methamphetamine.  This claim was raised in petitioner's second

United States District Court

For the Northern District of California

1  state habeas petition and was denied in a summary decision on the merits by the California

2  Supreme Court.

3          Petitioner cannot demonstrate that the state court's rejection of this claim was

4  objectively unreasonable under clearly established federal law; nor can he show that the denial

5  was based on an unreasonable determination of the facts.  As discussed above, the Sixth

6  Amendment guarantees the right to effective assistance of counsel.  *Strickland*, 466 U.S. at 686.

7  To prevail on a claim of ineffective assistance of counsel, petitioner must show both that

8  counsel's performance was deficient and that the deficient performance prejudiced petitioner's

9  defense.  *Ibid.* at 688.  A court need not determine whether counsel's performance was deficient

10  before examining the prejudice suffered by the defendant as the result of the alleged

11  deficiencies.  *Ibid* at 697; *Williams,* 52 F.3d at 1470 & n.3 (approving district court's refusal to

12  consider whether counsel's conduct was deficient after determining that petitioner could not

13  establish prejudice).

14          Here, petitioner cannot demonstrate that, even if it was deficient performance for

15  petitioner's counsel not to present expert evidence regarding his alleged methamphetamine use,

16  there was any resultant prejudice under *Strickland.*  Perhaps most critically, "juries are unlikely

17  to favor defenses based on abuse of dangerous drugs in evaluating a defendant's culpability for

18  violent behavior." *Mayfield*, 270 F.3d at 931 n.17.  It is very doubtful that any juror would have

19  found that petitioner's voluntary intoxication rendered him any less culpable at the guilt phase,

20  and petitioner cannot cite to any evidence or caselaw to the contrary.

21          It is similarly unlikely that any juror would have found petitioner's voluntary

22  intoxication to be a mitigating factor supporting a sentence of LWOP instead of death.

23  Petitioner does not demonstrate how such evidence would have been mitigating during the

24  penalty phase; additionally, the Supreme Court and other courts have repeatedly found that the

25  egregious nature of a defendant's offenses may overcome any alleged prejudice resulting from

26  counsel's failure to introduce mitigating evidence.  *See, e.g. Strickland*. 466 U.S. at 700;

27  *Gerlaugh v. Stewart*, 129 F.3d 1027, 1033, 1042 (9th Cir. 1997).  Here, in addition to the violent

28  circumstances of the crimes of conviction, the prosecution offered in aggravation evidence of

United States District Court

For the Northern District of California

1    other violent crimes perpetrated by petitioner and his prior felony convictions. *Rowland*, 4 Cal.

2    4th at 353. Given the significant aggravating circumstances, petitioner cannot reasonably argue

3    that introduction of evidence regarding his voluntary intoxication would have led to a different

4    result at the penalty phase. Because he cannot establish prejudice as a result of his counsel's

5    alleged deficient performance, petitioner's ineffective assistance claim must fail and summary

6    judgment is granted to respondent.

7    **18.**    **CLAIM 18**

8        In Claim 18, petitioner alleges that it was ineffective assistance for his counsel not to

9    introduce the entirety of petitioner's confession to Susan Lanet during the guilt phase of his

10    trial. This claim was raised in petitioner's second state habeas petition and denied as untimely

11    and on the merits in a summary opinion by the California Supreme Court.

12        Lanet was a key prosecution witness who testified during the guilt phase regarding

13    petitioner's confession to her that he killed the victim. The trial court held that Lanet was not

14    permitted to disclose any facts during her testimony relating to petitioner's prior convictions.

15    After a motion by petitioner's counsel, however, the trial court also held that admission of

16    Lanet's statements that petitioner had never mentioned any sexual motive for the fight — but

17    rather had told Lanet he killed Geri during a fight over drugs fueled by Geri's derogatory

18    statements to petitioner about ex-convicts — would open the door to admission of proof of

19    petitioner's prior convictions for rape and other crimes (RT 5847-51). As a result, petitioner's

20    counsel opted not to question Lanet regarding petitioner's statements to her that he killed the

21    victim after a fight relating to drugs. According to petitioner, his trial counsel ought to have

22    questioned Lanet regarding the statements petitioner made about the reason for the killing,

23    because it would have assisted in his defense argument that he did not have the requisite intent

24    to kill for first degree murder and that he did not commit rape. Petitioner argues this evidence

25    was so important to his defense that his counsel should have elicited it even though it would

26    have meant admission of petitioner's prior convictions. According to petitioner, the state court

27    was unreasonable when it decided otherwise.

28        Petitioner is incorrect. To prevail on a claim of ineffective assistance of counsel,

1  petitioner must show both that counsel's performance was deficient and that the deficient

2  performance prejudiced petitioner's defense.  *Strickland*, 466 U.S. at 688.  Given the egregious

3  and prejudicial nature of petitioner's prior convictions (including oral copulation, sodomy, and

4  lewd acts on a child), it was reasonable for his counsel to conclude that it was preferable to keep

5  evidence of his prior convictions out of the record, even if it meant foregoing testimony by

6  Lanet that the killing occured in a fight over drugs.  This is particularly true given that

7  testimony in question was a self-serving statement by petitioner that was supported by no other

8  evidence.  *See, e.g., Brodit*, 350 F.3d at 994 (holding that state court reasonably concluded that

9  trial attorney provided effective assistance of counsel where attorney declined to present

10  evidence favorable to defense out of concern that it would open door to unfavorable evidence).

11  Because petitioner cannot demonstrate either that his counsel's conduct regarding Lanet's

12  testimony amounted to deficient performance or that it resulted in prejudice, *Strickland*, 466

13  U.S. at 688, this claim must be denied and summary judgment granted to respondent.

14  **19.   CLAIM 19**

15       In Claim 19, petitioner alleges that the jurors received extrajudicial information about

16  LWOP and erroneously based their sentence of death on that information.  Specifically,

17  petitioner alleges that the jurors received information that even if petitioner was sentenced to

18  LWOP, he could still be released from prison via, for example, commutation or pardon.  This

19  claim is closely related to Claim 3, *supra*, except that this claim includes the allegation that a

20  juror received the information from an outside source and then repeated it during deliberations.

21  This claim was raised in petitioner's first state habeas petition and denied on the merits in a

22  summary opinion by the California Supreme Court.

23       An independent review of the record reveals that the California Supreme Court's

24  summary decision denying relief on this claim was not objectively unreasonable.  As our Court

25  of Appeal has stated, we must "focus primarily on Supreme Court cases in deciding whether the

26  state court's resolution of the case constituted an unreasonable application of clearly established

27  federal law."  *Greene*, 288 F.3d at 1089 (citations omitted).  Petitioner cannot cite to any United

28  States Supreme Court authority suggesting that a jury's brief discussion of views regarding the

United States District Court

For the Northern District of California

impact of various sentences is reversible error, and "[a] state court cannot possibly have contravened, or even unreasonably applied, 'clearly established Federal law, as determined by the Supreme Court of the United States,' by rejecting a type of claim that the Supreme Court has not once accepted as valid." *In re Davis*, 130 S.Ct. 1, 3 (2009).

Here, petitioner supports his claim by citing to several juror declarations, declarations that were also submitted to the California Supreme Court. As a threshold matter, petitioner has not established that the information contained in the declarations is even admissible. There is a "weighty government interest in insulating the jury's deliberative process," *Tanner v. United States*, 483 U.S. 107, 120 (1987), and thus Fed. R. Evid. 606(b)(1) limits the admission of testimony from a juror regarding "any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental process concerning the verdict or indictment." Furthermore, a court reviewing the validity of a verdict "may not receive a juror's affidavit or evidence of a juror's statement on these matters." *Ibid.*

A juror may testify if, *inter alia*, "extraneous prejudicial information was improperly brought to the jury's attention," Fed. R. Evid. 606(b)(2), but this petitioner cannot establish. To begin with, as respondent points out and as petitioner concedes, the jury declarations contain no allegations of outside information actually being presented to the jury; instead, they include individual jurors' opinions on the matter and allegations that the impact of an LWOP sentence was discussed.

More importantly, petitioner cannot establish that information regarding whether a defendant sentenced to LWOP might nonetheless be released under certain circumstances is prejudicial. A petitioner is entitled to habeas relief only if it can be established that the exposure to extrinsic evidence had "'substantial and injurious effect or influence in determining the jury's verdict.'" *Sassounian v. Roe*, 230 F.3d 1097, 1108 (9th Cir. 2000) (quoting *Brecht*, 507 U.S. at 623); *see Jeffries v. Blodgett*, 5 F.3d 1180, 1190 (9th Cir. 1993) (same). In other words, the error must result in "actual prejudice." *See Brecht*, 507 U.S. at 637. As discussed in detail *supra* in Claim 3, the Supreme Court has held that it is not prejudicial for a jury to be

**United States District Court**
For the Northern District of California

1    specifically instructed that it is allowed to consider gubernatorial commutation powers of an

2    LWOP sentence.  *Ramos*, 463 U.S. at 1012-13.  As such, petitioner cannot — due to the

3    absence of clearly established federal law to the contrary — demonstrate that the jury's receipt

4    of information or speculation regarding such a possibility is prejudicial.  Accordingly, summary

5    judgment is granted to respondent on this claim.

6    **20.    CLAIM 20**

7          In Claim 20, petitioner alleges that juror misconduct occurred because at least one

8    alternate juror communicated with sitting jurors and discussed their deliberations.  According to

9    petitioner, this alleged communication undermines the reliability of both the guilt phase and the

10   penalty phase verdicts.  This claim was raised in petitioner's first state habeas petition and

11   denied on the merits in a summary opinion by the California Supreme Court.  With additional

12   factual allegations, this claim was also raised in petitioner's second state habeas petition and

13   denied by the California Supreme Court.

14         An independent review of the record reveals that the California Supreme Court's

15   summary decision denying relief on this claim was not objectively unreasonable.  Petitioner

16   maintains, based on declarations from various jurors, that an alternate spoke with the sitting

17   jurors and asked them questions about the status of deliberations.  Petitioner also alleges that

18   this same alternate juror passed information he received from the sitting jurors on to petitioner's

19   family members.

20         Petitioner's allegations do not amount to a credible claim of prejudicial error.  The

21   Supreme Court has held that the Constitution "does not require a new trial every time a juror

22   has been placed in a potentially compromising situation." *Smith v. Phillips*, 455 U.S. 209, 217

23   (1982).  The safeguards of juror impartiality, such as voir dire and protective instructions from

24   the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or

25   influence that might theoretically affect their vote. *Ibid.; see also*, *Rushen v. Spain*, 464 U.S.

26   114, 118 (1983).

27         To begin with, petitioner cannot demonstrate that the alternate juror's alleged

28   discussions with the sitting jurors — while perhaps inappropriate — were in any way

41

United States District Court

For the Northern District of California

prejudicial to him.  Petitioner can cite to no clearly established federal law holding that this type of contact is prejudicial.  This is not a case where the sitting jurors were being provided with extrinsic information —  and even if it were, extrinsic information may only be a basis for habeas relief if it had a "substantial and injurious effect or influence in determining the jury's verdict."  *Sassounian*, 230 F.3d at 1108 (citations omitted).  While there is no Supreme Court authority directly on point, the Supreme Court has found that it was not inherently prejudicial for an alternate juror to remain with the sitting jurors during deliberations.  *United States v. Olano*, 507 U.S. 725 (1993).   The decisions to which petitioner has cited are distinguishable from the facts here.   For example, in *Remmer v. United States*, 347 U.S. 227 (1954), the juror had allegedly been offered a bribe by an outside source — not been asked questions by an alternate juror —  and an FBI investigation had resulted.  And in *Parker v. Gladden*, 385 U.S. 363 (1966), jurors had heard from the bailiff that the defendant was wicked and guilty.

In addition, petitioner cannot demonstrate that the alternate juror's discussions with petitioner's family members were prejudicial to him.  The alternate juror did not sit on the jury that rendered the verdict, and there is nothing in the juror declarations that indicates that the alternate juror was relaying information to the sitting jurors from petitioner's family or that the sitting jurors were aware that the alternate juror was talking to petitioner's family.  Petitioner can cite to no clearly established federal law holding that such a situation is inherently prejudicial, and in the absence of prejudice, he is not entitled to habeas relief.  *Sassounian*, 230 F.3d at 1108; *Brecht*, 507 U.S. at 623.  Because petitioner cannot demonstrate that the state court's decision is unreasonable under Section 2254(d), this claim must be denied and summary judgment granted to respondent.

**21.   CLAIM 21**

In Claim 21, petitioner alleges that the jurors improperly considered the fact that petitioner did not testify at trial.  This claim was raised in petitioner's second state habeas petition and denied in a summary opinion by the California Supreme Court.

This claim is without merit.  To begin with, as with Claim 19, *supra*, petitioner's sole support for this claim is juror declarations, and petitioner has failed to show that the information

United States District Court

For the Northern District of California

1    included in these declarations is even admissible under Fed. R. Evid. 606(b)(2). Indeed, our

2    Court of Appeals has held that testimony from jurors that they "ignored the court's instructions

3    and discussed a defendant's failure to testify during deliberations . . . is inadmissible under Rule

4    606(b) because . . . it does not concern facts bearing on extraneous or outside influences on the

5    deliberations." *United States v. Rutherford*, 371 F.3d 634, 640 (9th Cir. 2004). Accordingly,

6    petitioner cannot demonstrate that the state court's decision denying this claim was

7    unreasonable, and summary judgment must be granted to respondent.

8    **22.    CLAIM 22**

9         In Claim 22, petitioner maintains that a member of the trial court staff gave information

10   to a juror that petitioner's family was being searched for weapons before they were allowed to

11   enter the courtroom. Petitioner maintains that these remarks were prejudicial and violated his

12   rights under the Fifth, Sixth, Eighth and Fourteenth Amendments. This claim was raised in

13   petitioner's second state habeas petition and denied in a summary opinion by the California

14   Supreme Court.

15        An independent review of the record reveals that the state court's summary dismissal of

16   this claim was not objectively unreasonable. *See Delgado*, 233 F.3d at 982. To begin with, the

17   only declaration petitioner has submitted in support of this claim — to the California Supreme

18   Court and to this court — is unsigned. Under California law, something more than an unsworn

19   statement is required to make a *prima facie* claim for relief, *People v. Madaris*, 122 Cal. App.

20   3d 234, 241-42 (1981), and petitioner cannot support his claim for habeas relief based on an

21   unsigned, unsworn declaration relaying a hearsay statement. Moreover, the declaration gives

22   no context as to how, when or where the juror allegedly heard the information that petitioner's

23   family was being searched for weapons, or whether she passed the information on to other

24   jurors (Exh. G to Petitioner's Opp. To Motion For Summary Judgment).

25        Even if petitioner had submitted a signed declaration, he would be unable to

26   demonstrate that the state court's decision denying this claim was unreasonable. As discussed

27   *supra,* extrinsic evidence relayed to jurors may only be a basis for habeas relief if it had a

28   "'substantial and injurious effect or influence in determining the jury's verdict.'" *Sassounian*,

43

230 F. 3d at 1108 (quoting *Brecht*, 507 U.S. at 623). In order to establish relief on a particular claim, petitioner must show that the state court's adjudication of his claim was not merely wrong but unreasonable "beyond any possibility for fair-minded disagreement," *Richter* 131 S. Ct. at 786; the information in the unsigned declaration falls well below this threshold.

Petitioner argues that if he is granted an evidentiary hearing he may be able to establish additional facts demonstrating prejudice and entitling him to relief on this claim. Under AEDPA, this is not permissible, as a federal court may not generally consider evidence beyond the state court record in determining whether there was a reasonable basis for the state court decision. *Pinholster*, 131 S. Ct. at 1398, 1400 n.7; 28 U.S.C. 2254(d). Accordingly, this claim is denied and summary judgment is granted to respondent.

### 23. CLAIM 23

In Claim 23, petitioner maintains that he is factually innocent and that he is entitled to habeas relief on this ground. This claim was raised in petitioner's second state habeas petition and denied in a summary opinion by the California Supreme Court.

Petitioner cannot demonstrate that the state court's denial of this claim was unreasonable pursuant to Section 2254(d). Perhaps most importantly, the Supreme Court has never held that a freestanding claim of actual innocence may serve as a basis for a grant of habeas relief, even in capital cases. *Herrera v. Collins*, 506 U.S. 390, 400 (1993). Rather, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Id.* More recently, the Supreme Court has reconfirmed that an actual innocence claim has never been held to be a basis for habeas relief, stating:

> This Court has *never* held that the Constitution forbids the execution of a convicted defendant who has had a full and fair trial but is later able to convince a habeas court that he is "actually" innocent. Quite to the contrary, we have repeatedly left that question unresolved, while expressing considerable doubt that any claim based on alleged "actual innocence" is constitutionally cognizable. [Citations omitted]. A state court cannot possibly have contravened, or even unreasonably applied, "clearly established Federal law, as determined by the Supreme Court of the United States," by rejecting a type of claim that the Supreme Court has not once accepted valid.

*Davis*, 130 S.Ct. at 2-3.

44

United States District Court

For the Northern District of California

In addition, even if the Supreme Court had established that freestanding claims of actual innocence are cognizable on federal habeas, petitioner has not made any compelling allegations, or cited to any meaningful evidence, in support of such a claim. For example, petitioner alleges that he is factually innocent of rape. As the discussion of Claim 9 confirms, however, there was more than sufficient evidence in the record for a rational trier of fact to conclude both that Geri was alive at the time of intercourse and that she did not consent. *Rowland*, 4 Cal. 4th at 270. Summary judgment on this claim must be granted to respondent.

### 24. CLAIM 24

In Claim 24, petitioner maintains that the California death penalty statutes are unconstitutional in both formulation and application. Specifically, he argues that California's death penalty statute is overbroad in that it allows, according to petitioner, virtually any first-degree murder case to be charged as a death penalty case, in violation of the Eighth Amendment. This claim was raised in petitioner's second state habeas petition and denied in a summary opinion by the California Supreme Court.

Petitioner cannot demonstrate that the state court decision regarding this claim was unreasonable under clearly established federal law. Petitioner maintains that the California death penalty scheme fails to adequately narrow the class of first-degree murderers eligible for the death penalty. The applicable United States Supreme Court law, however, holds that in order to pass constitutional muster, a state's death penalty scheme "may not apply to every defendant convicted of murder; it must apply only to a subclass of defendants convicted of murder." *Tuilaepa,* 512 U.S. at 972. In *Tuilaepa*, the Supreme Court held that California's death penalty scheme does appropriately narrow the class of death-eligible defendants and does not apply to every defendant convicted of murder. Accordingly, this claim must be denied and summary judgment granted to respondent.

### 25. CLAIM 25

In Claim 25, petitioner maintains that he was denied meaningful review of his claims on direct appeal and state habeas corpus proceedings by the California Supreme Court. This claim was raised in petitioner's second state habeas petition and denied in a summary opinion by the

United States District Court

For the Northern District of California

1  California Supreme Court.

2  Petitioner is unable to demonstrate that the state court's decision is objectively

3  unreasonable. *Delgado,* 223 F.3d at 982. An independent review of the record reveals that

4  petitioner's claim has no merit.

5  As a threshold matter, petitioner has not demonstrated that these claims are cognizable

6  on federal habeas review. First, to the extent that petitioner is challenging the state court's

7  habeas review of his claims, petitioner cannot demonstrate that there is any federal

8  constitutional right to state habeas proceedings. As a result, a claim "alleging errors in the state

9  post-conviction review process is not addressable through habeas corpus proceedings."

10 *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989). Thus, petitioner's claim that the habeas

11 review of his case was unfair must be denied.

12 To the extent that petitioner is maintaining that he received an unfair direct appellate

13 review of his case, that claim is also without merit. Petitioner can cite to no clearly established

14 Supreme Court law that requires a specific type of appellate review. In addition, there is

15 nothing in the California Supreme Court's lengthy and exhaustive opinion on direct review

16 indicating that it did not meaningfully consider petitioner's claims. *Rowland*, 4 Cal. 4th at 250-

17 283. Finally, our Court of Appeals has confirmed that the California death penalty statute

18 "ensures meaningful appellate review." *Williams*, 52 F.3d at 1484.

19 In sum, because petitioner cannot demonstrate the state court's denial of this claim was

20 objectively unreasonable, this claim must be denied and summary judgment granted to

21 respondent.

22 **26.    CLAIM 26**

23 In Claim 26, petitioner alleges that he was denied ineffective assistance of appellate

24 counsel. This claim was raised in petitioner's second state habeas petition and denied as

25 untimely and on the merits by the California Supreme Court.

26 The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant

27

28

**United States District Court**
For the Northern District of California

the effective assistance of counsel on his first appeal as of right.[10]  *Evitts v. Lucey*, 469 U.S. 387,

391-405 (1985).  Claims of ineffective assistance of appellate counsel are reviewed according to

the standard set out in *Strickland*, 466 U.S. at 668.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000);

*Moormann v. Ryan*, 628 F.3d 1102, 1106 (9th Cir. 2010).  First, the petitioner must show that

counsel's performance was objectively unreasonable, which in the appellate context requires the

petitioner to demonstrate that counsel acted unreasonably in failing to discover and brief a

merit-worthy issue.  *Smith*, 528 U.S. at 285; *Moormann*, 628 F.3d at 1106.  Second, the

petitioner must show prejudice, which in this context means that the petitioner must

demonstrate a reasonable probability that, but for appellate counsel's failure to raise the issue,

the petitioner would have prevailed in his appeal.  *Smith*, 528 U.S. at 285-286; *Moormann*, 628

F.3d at 1106.

Appellate counsel does not have a constitutional duty to raise every nonfrivolous issue

requested by defendant.  *See Jones v. Barnes*, 463 U.S. 745, 751-54 (1983); *Gerlaugh*, 129 F.3d

at 1045; *Miller*, 882 F.2d at 1434 n.10.  The weeding out of weaker issues is widely recognized

as one of the hallmarks of effective appellate advocacy.  *See ibid.* at 1434.  Appellate counsel

therefore will frequently remain above an objective standard of competence and have caused his

client no prejudice for the same reason – because he declined to raise a weak issue.  *Ibid.*

To prevail on this claim, petitioner must show that there was no reasonable basis for the

state court's summary denial of this claim.  *Richter*, 131 S.Ct at 786.  This petitioner cannot do.

Indeed, petitioner does not even attempt to do so.  Rather, he primarily maintains, both in his

petition and in his opposition to respondent's motion for summary judgment, that he will

present additional facts after discovery and an evidentiary hearing on this claim.  Under

AEDPA, this is not permissible, as a federal court may not generally consider evidence beyond

the state court record in determining whether there was a reasonable basis for the state court

decision.  *Pinholster*, 131 S. Ct. at 1398, 1400 n.7; 28 U.S.C. 2254(d).

---

[10] To the extent petitioner is alleging deficiencies by his counsel during state habeas proceedings, his claim must fail.  The Supreme Court has confirmed that there is no constitutional right to effective assistance of counsel beyond trial and first appeal as of right. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).

United States District Court

For the Northern District of California

Furthermore, a review of the record confirms that petitioner's appellate counsel did not fail to discover and brief a merit-worthy issue; nor is there any indication that had any additional issue been raised, petitioner would have prevailed in his appeal.  *Smith*, 528 U.S. at 285-286**.**  Accordingly, respondent is entitled to summary judgment on this claim.

**27.    CLAIM 27**

In Claim 27, petitioner maintains that a death sentence carried out via lethal gas or lethal injection constitutes cruel and unusual punishment under international law, specifically the International Covenant of Civil and Political Rights.  This claim was raised in petitioner's second state habeas petition and was denied by the California Supreme Court.

This claim is meritless and borders on frivolous.  To begin with, petitioner cannot demonstrate that any claim of a violation of international law is even cognizable on federal habeas review, given that such review is designed to address claims that a petitioner is in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. 2254(a).  International law is not United States law, and petitioner does not demonstrate that the International Covenant of Civil and Political Rights creates a form of relief enforceable in United States courts.

In addition, because there is no clearly established federal law holding that the California death penalty violates international law, and that this alleged violation creates a cognizable claim on federal habeas review, petitioner's claim must also fail on the merits. Without citation to any mandatory or persuasive authority in support of his argument, petitioner cannot demonstrate that the state court's denial of this claim was objectively unreasonable. This claim is therefore denied, and respondent is entitled to summary judgment on this claim.

**28.    CLAIM 28**

In Claim 28, petitioner maintains the prosecutor's alleged eliciting of testimony regarding petitioner's future dangerousness from a penalty phase witness violated the Eighth Amendment and petitioner's rights to due process.  The California Supreme Court addressed this claim in a reasoned opinion on direct appeal, as follows:

United States District Court

For the Northern District of California

Defendant first complains of the prosecutor's unobjected-to cross-examination of defense witness James W.L. Park, a correctional consultant.

On direct examination, defense counsel elicited brief testimony from Park on the conditions of confinement for a person sentenced to life imprisonment without possibility of parole. He did so in an evident attempt to show substantial restrictions on freedom and minimal opportunities for violence.

On cross-examination, the prosecutor elicited testimony from Park that was briefer still on the same matter, including such specific topics as the availability of privileges, access to illicit drugs and alcohol, and the presence of women among prison staff. He did so in an evident attempt to make a showing contrary to defense counsel's, indicating the liberties that might be enjoyed and the occasions that might arise for inflicting physical harm, sexual and otherwise.

A prosecutor, of course, may seek to disprove on cross-examination what defense counsel sought to prove on direct examination. (*People v. Gordon*, *supra*, 50 Cal. 3d at p. 1270.) The prosecutor here did that – and substantially nothing more. Defendant asserts that the inquiry on cross-examination went beyond that on direct examination, improperly touching on future dangerousness. The assertion, however, is not supported by the record.[11]

*Rowland,* 4 Cal. 4th at 275.

Respondent moves for summary judgment on Claim 28 on the grounds that, as detailed above, the California Supreme Court reasonably considered and rejected petitioner's contentions on the merits, thus foreclosing relief under 28 U.S.C. 2254(d). He also asserts that the state court's findings of facts are entitled to deference pursuant to 28 U.S.C. 2254.

Respondent is correct. Petitioner is unable to cite to any clearly established federal law

---

[11] [Opinion Footnote 16] Defendant claims that the evidence elicited on cross-examination was inadmissible under both California law and the United States Constitution. We reject the point. "It is of course, the general rule that questions relating to the admissibility of evidence will not be reviewed on appeal in the absence of a specific and timely objection in the trial court on the ground sought to be urged on appeal.'" (*People v. Benson*, *supra*, 52 Cal. 3d at p. 786, fn 7) [additional citations omitted].) At trial, defense counsel failed to make any objection whatsoever. Contrary to what defendant appears to argue, the omission did not constitute ineffective assistance in violation of the Sixth Amendment. Counsel's performance was not deficient; it was not "objectively unreasonable . . . to remain silent and thereby call no attention to the prosecutor's [questioning]" [citation omitted] especially when, as here questioning was relatively brief.

Defendant also claims that the prosecutor engaged in misconduct by referring in his summation to the evidence elicited on cross-examination. There was no objection. In any event, there was no impropriety. The challenged comments comprised an unproblematic argument to the effect that life imprisonment without possibility of parole was not the appropriate punishment in this case. There is no reasonable likelihood that the jury understood the words otherwise. (*People v. Clair, supra,* 1 Cal. 4th at pp. 662-663 [stating the "reasonable likelihood" standard as the test for determining whether the jury misconstrued or misapplied comments by a prosecutor].)

demonstrating that the state's court's conclusions were unreasonable.  In fact, petitioner cites to no decisions at all in support of his argument regarding this claim, arguing instead that summary judgment should be denied and an evidentiary hearing held on this claim.  Given that, in order to establish relief on a particular claim, petitioner must show that the state court's reasoned adjudication of his claim was not merely wrong but unreasonable "beyond any possibility for fair-minded disagreement," *Richter* 131 S. Ct. at 786, petitioner's conclusory argument is insufficient.  This claim is denied and summary judgment is granted to respondent.

## CONCLUSION

For the foregoing reasons, respondent's motion for summary judgment is **GRANTED** as to all claims.  Petitioner's motion for an evidentiary hearing is **DENIED** as to all claims.  The petition for a writ of habeas corpus is **DENIED** as to all claims.

Rule 11(a) of the Rules Governing Section 2254 Cases now requires a district court to rule on whether a petitioner is entitled to a certificate of appealability in the same order in which the petition is denied.  Petitioner has failed to make a substantial showing that his claims amounted to a denial of his constitutional rights or demonstrate that a reasonable jurist would find the denial of his claims debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Consequently, no certificate of appealability is warranted in this case.

**IT IS SO ORDERED.**

Dated: October __2__, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

50